Morris L. Elmore
(Name)
P.O. Box 799004 / #18/117L
(Address)
San Diego, CA. 92179
(City, State, Zip)
F03648
(CDC Inmate No.)





FILED

AUG 11 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# United States District Court
## Southern District of California

Morris Larnard Elmore,
(Enter full name of plaintiff in this action.)

                Plaintiff,

v.

San Diego Police Department
G. minter # 6052,
Massey # 6310,
Salas # 4442,
(Enter full name of each defendant in this action.)

                Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

'08 CV 1464 L PCL

Civil Case No._____
(To be supplied by Court Clerk)

Complaint under the
Civil Rights Act
42 U.S.C. § 1983

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.
Plaintiff Asserts Jurisdiction Pursuant to 28 U.S.C. § 1343(a)(3). — And U.S.C. § 1983.

## B. Parties

1. Plaintiff: This complaint alleges that the civil rights of Plaintiff, Morris Elmore,
(print Plaintiff's name)
F03648 , who presently resides at R.J.D.C.F./P.O. Box 799004
(mailing address or place of confinement)
1401 Broadway (Police HeadQuarters), were violated by the actions
of the below named individuals. The actions were directed against Plaintiff at_____
San Diego Police Department on (dates) 4-12-08, Same, and Same.
(institution/place where violation occurred)    (Count 1)    (Count 2)    (Count 3)

2. <u>Defendants</u>: (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant G. Minter #6052 resides in SAN Diego, CA.
(name)                                    (County of residence)
and is employed as a Police Officer / San Diego . This defendant is sued in
(defendant's position/title (if any))
his/her ☒ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: Under Criminal mis-conduct, malice, racial —
Profiling, Professional Negligence by Lying under Oath
and in uniform as a San Diego Police Officer.

Defendant Officer Massey #6310 resides in San Diego, CA.
(name)                                    (County of residence)
and is employed as a Police Officer / San Diego . This defendant is sued in
(defendant's position/title (if any))
his/her ☒ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: under Criminal mis-Conduct, malice, racial —
Profiling, Professional Negligence by Lying in uniform as
as Police Officer.

Defendant SGT. Salas #4442 resides in San Diego, CA.
(name)                                    (County of residence)
and is employed as a Police Officer (Supervisor) . This defendant is sued in
(defendant's position/title (if any))
his/her ☒ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: Conspiracy to "commit" Criminal mis-conduct,
malice, racial Profiling, Professional Negligence by Lying in un—
iform, and Police Reports as a "Supervising officer".

Defendant Minter, Massey and Salas resides in San Diego, CA.
(name)                                    (County of residence)
and is employed as a San Diego Police Officers . This defendant is sued in
(defendant's position/title (if any))
his/her ☐ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: ALL three defendant and Official Ca—
pacity is being sued "In making, and the conspi—
racy of a "False Arrest" while "Acting" under the
Color of Law: As San Diego Police Officers.



**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

Count 1: The following civil right has been violated: 8th Amendment, Freedom From Cruel and unusual Punishment.

(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

I, Morris Elmore, was detained in San Diego Central Jail From April 12, 2008, until May 9, 2008, under False (two) Charges which became a "False Arrest" because Officer G. minter, # badge 6052, Lied on his police Report and in uniform with the help and Conspiracy of Officer massey # 6310, and SGT. Salas # 4442, with ALL three Officers: minter, massey, and Salas, being Caught on Surveillance Video Footages at that Location "1401 Broadway, Police HEAD Quarters, underground Garage on April 12, 2008, approximately 9:00am to 1:00pm, in "Criminal Mis-conduct"; charging me with Possession For Sales of Cocaine Base 1.43 grams and simple Possession of Cocaine Base 0.02 grams Found in Room #138, of the Strip Search Room, and the back Seat of Officer minter's, Patrol Car: On the morning of April 12, 2008, Approximately 9:00am, while in the EAST Village by "NEAL Good Homeless Center"; I was Stopped, targetted, and Harassed by Officer minter, Badge #6052, For NO apparent reason while waiting For a Food drop off by Churches, because at this time April 12, 2008, I was Homeless and Just returned to Society march 24, 2008, From a Violation. HE ranned my name to see if I was on Parole or probation because Some guy by the Name of "michael-Johnson, had told him he had Seen me Smoking Crack Cocaine, and Said that I Also had Crack Pipe on me.

Count 2: The following civil right has been violated: 8th Amendment, Freedom From Cruel and unusual Punishment.

(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, by name, did to violate the right alleged in Count 2.]

After running my name he began to Search me For the Crack Cocaine and the "pipe" and did Not Find anything but Continued to harass me. In officer minter's, Badge- #6052, Officer's Report Narrative, page#4 oF 8, he men- tioned he Latered Searched a Suspect by the Name oF "Raymond Crowley", that was on the Scene with me, — April 12, 2008, based on his parole, and Found a glass pipe in his pocket. Raymond Crowley, was handcuffed and placed in the rear Seat oF officer minter's, patrol Car. AFter getting Caught with the Crack pipe in his pocket, mr. Crowley, is now telling officer minter, that mr. Elmore, has crack Cocaine hidden between his butt Cheeks 1.43 grams. With this InFormation given by mr. Raymond Crowley, oF mr. Elmore, having Crack- Cocaine hidden between his Butt Crack, mr. Elmore, is Searched again by officer minter, but this time with a "Trained" hand going between his butt Crack in Search For the 1.43 grams oF Cocaine Base which iF it's there, officer minter, will Not be able to miss it (large piece oF Crack Rock 1.43 grams) Nor the the Crack pipe — In Exhibit (B) page#29, lines- 9-28, at the   Scene "300 14th Street". Now, officer minter, has two reliable witnesses: mr. michael- Johnson, the Concerned Citizen which Flagged officer- minter, down because he wants to keep the Community Clean oF drugs on page#3 oF 8, oF the officer's ........

Count 3: The following civil right has been violated: 8ᵗʰ Amendment Freedom

From Cruel and unusual Punishment

(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 3. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, by name, did to violate the right alleged in Count 3.]

... Report Narrative, Stated that he witness mr. Elmore, Smoking Crack Base and that he knew For sure that mr. Elmore, had a "Crack Pipe" on him or in his Possession, and OFFicer minter, Finding nothing on me, ~ No Contraband whatsoever. Unlike mr. Raymond Crowley, the Other witness For OFFicer minter, he mentioned on page #4 of 8, of his OFFicer's Report Narrative, where OFFicer minter, Found a glass crack pipe in his pocket. Stated that mr. Elmore, had 1.43 grams ~ OF Cocaine Base hidden in his butt crack. Also in Exhibit (B), page #18, Lines #8-17, the Lawyer David ~ Thompson, asked OFFicer minter, did he know that mr. ~ Raymond Crowley, was arrested Later that same day ~ April 12, 2008, For being under the InFluence OF a Controlled substance (crack Cocaine), and on parole ~ After OFFicer minter, Released mr. Crowley, at the scene. by giving mr. Crowley, a Citation Y471747, For possession OF a Narcotic paraphernalia, which he, OFFicer ~ minter, Stated this InFormation on page #5 of 8, OF his OFFicer's Report Narrative. Also in Exhibit (B) page ~ #18, Lines 8-17, Explains that Not only did mr. Crowley, got arrested Later that same day April 12, 2008, but it also explains that somewhere too between April ~ 25 to 26, 2008, that OFFicer minter, did in Fact arrested mr. Raymond Crowley, For "Petty Theft". mr. David Thompson, Then asked on the same ...

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

Count 1: The following civil right has been violated: 8th Amendment Freedom
From Cruel and unusual Punishment
(E.g., right to medical care, access to courts,
due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, by name, did to violate the right alleged in Count 1.]

..... page #18, Exhibit (B), "And this is the man (mr. Crowley) whose word you were taking For mr. Elmore, putting Crack Cocaine on the Seat of your Patrol Car and in the Crack of his butt? In Exhibit (B), page #12, Line #15-23, Officer minter, mentioned how Another Officer by the Name of mattley, which he Stated was a "male" Officer, Came to the "Scene" 300 14th Street, to Assist him and watch the three suspects. Exhibit (B) page #29, Line 1 - 2, States he did the best Search of miss. Sonya moore, he could and Let her go. And For the "records": why would he Search a "woman" suspect when he has a woman Police Officer at the Scene to Assist him? Officer mattley, is a "white Police Woman Officer" that was working that Area (EAST Village), on April 12, 2008, but was not at that "scene" 300 14th Street, with Officer minter. Also, he "Lied" about her being a man Officer, In Exhibit (B), page #37, Lines 24-28, and page 38, Line 1-7, The Lawyer mr. Thompson, asked: "why weren't they in Seatbelts? Officer minter, answered," I didn't see the need, based on his "SAFety", the way he was trained, and what "other" officers do, nobody get's seat belted. The Lawyer asked Again: "what are the seat belts in the Car For? Officer minter, stated: "For their SAFty". Also, he has Officer mattley, at the Scene to Assist him.

Count 2: The following civil right has been violated: 8th Amendment Freedom

(E.g., right to medical care, access to courts,

From Cruel and unusual Punishment

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, by name, did to violate the right alleged in Count 2.]

Exhibit (B) page 30, Line 26-28/ and page 31, Line 1-27, the Law-yer. mr. Thompson asked: You suspected that mr. Elmore, might have been under the influence of a Narcotic drug, and it shows his LACK of Experience to take the Necessary step's to make sure by "testing"/ pages #31-32, when it comes to a Suspect that he may think that's under the influence of a drug and him being Professional. In Exhibit (B) page #40, Lines 6-8, mr. Thompson, asked officer minter, did he personally take mr. Crowley, out of his patrol car? And minter, stated: "Eventually, I did. Now, three pages over "43" Exhibit (B), Line 3-14, it show officer minter, Just Lied Again by saying Another officer sat mr. Crowley, outside the car other than himself. Exhibit (B) Page 39, Line 7-28, officer minter, pretty much Explains what Police HEAD Quarters Looks Like under Ground and how a patrol car get's permitted into the Gated secured Area Also about the video camera's down there For "Everybody's" Protection. And Last, his patrol Car pulling up to an area Near Room #138, strip search Room with mr. Crowley and mr. Elmore, still in the back seat of his patrol car on April 12, 2008, Police HEAD Quarters, Approximately 9:00Am to 1:00pm, on "Video Camera" to Find the Patrol Car that was assigned to officer minter, on April 12, 2008, by Looking For the patrol Car Number which is Located on the "ROOF" of the Car. Even if the "Video Footages" does rolls over Every Five days or so, the Information Rolls over onto a …….

§ 1983 SD Form
(Rev 4/06)

⑥

<u>Count 3</u>:  The following civil right has been violated: 8ᵗʰ Amendment Freedom

From Cruel and unusual Punishment.

(E.g., right to medical care, access to courts,

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>:  [Include all facts you consider important to Count 3. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]

....."Hard Drive"— Data Bank or Base. So with the Pro-
Cedures From the Board of Directors, Commission,
Etc, you Just "can't" delete Information (Evidence)
that Quickly. Also, officer minter, is the one that
is Claiming "He" Found 1.43 grams of Cocaine base in
the back seat of his Patrol car at that     Location
Police Head Quarters, pointed towards (Video Camera's)
his Patrol Car. And Last, —   Strip Search —
room #138, Issued. Simple : Get my "D.N.A"—
off of the 0.02 grams Cocaine Base that officer~
massey # 6310, said that he, and he only SAW Fall
From my undershorts. You have three officers
in one small Room #138, minter #6052, massey #
6310, and SGT. salas #4442, and all three officers
are in this Room #138, For one reason and one rea-
son only and that's to "watch" my, mr. Elmore's,
Every move to make sure I don't have
any drugs or Contraband on my person, but
only one officer out of the three, witness
this 0.2 grams Fall From my underwear. And
SGT. salas," Review Video Footage", is supervising
these two young officers: minter and massey,
in Lying about the discovery of the drugs, 1.43 grams,
and 0.02 gram Cocaine Base, and participating in
Criminal Mis-Conduct by lying on their Police Re-
ports and officer minter #6052, lying in the Court
of Law and in uniform on April 29, 2008, Reporter's
Transcript's Page 1-57/Dept. #53

**D.  Previous Lawsuits and Administrative Relief**

1.  Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case? ☐ Yes ☑ No.

If your answer is "Yes", describe each suit in the space below.  [If more than one, attach additional pages providing the same information as below.]

(a)  Parties to the previous lawsuit:
Plaintiffs: _____ N/A _____

Defendants: _____ N/A _____

(b)  Name of the court and docket number: ___ N/A _____

_____

(c)  Disposition: [ For example, was the case dismissed, appealed, or still pending?] ___ N/A ___

_____

(d)  Issues raised: ___ N/A. _____

_____

_____

_____

(e)  Approximate date case was filed: ___ N/A _____

(f)  Approximate date of disposition: ___ N/A. _____

2.  Have you previously sought and exhausted all forms of informal or formal relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDC Inmate/Parolee Appeal Form 602, etc.] ? ☑ Yes ☐ No.

If your answer is "Yes", briefly describe how relief was sought and the results.  If your answer is "No", briefly explain why administrative relief was not sought.
Pending Internal Affairs unit (Investigation).

_____

_____

_____

_____

_____

_____

_____

**E. Request for Relief**

Plaintiff requests that this Court grant the following relief:

      1. An injunction preventing defendant(s): _____

_____

_____

_____

      2. Damages in the sum of $ 25,000,000.00

      3. Punitive damages in the sum of $ _____Same_____ .

      4. Other: _____Same_____

_____

**F. Demand for Jury Trial**

   Plaintiff demands a trial by ☑ Jury ☐ Court. (Choose one.)

**G.  Consent to Magistrate Judge Jurisdiction**

   In order to insure the just, speedy and inexpensive determination of Section 1983 Prisoner cases filed in this district, the Court has adopted a case assignment involving direct assignment of these cases to magistrate judges to conduct all proceedings including jury or bench trial and the entry of final judgment on consent of all the parties under 28 U.S.C. § 636(c), thus waiving the right to proceed before a district judge. The parties are free to withhold consent without adverse substantive consequences.

   The Court encourages parties to utilize this efficient and expeditious program for case resolution due to the trial judge quality of the magistrate judges and to maximize access to the court system in a district where the criminal case loads severely limits the availability of the district judges for trial of civil cases.  Consent to a magistrate judge will likely result in an earlier trial date.  If you request that a district judge be designated to decide dispositive motions and try your case, a magistrate judge will nevertheless hear and decide all non-dispositive motions and will hear and issue a recommendation to the district judge as to all dispositive motions.

   You may consent to have a magistrate judge conduct any and all further proceedings in this case, including trial, and the entry of final judgment by indicating your consent below.

Choose only one of the following:

| ☑ Plaintiff consents to magistrate judge jurisdiction as set forth above. | **OR** | ☐ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case. |
|---|---|---|

x 8-11-08
Date

Morris Elmer
Signature of Plaintiff

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA        )
                           ) SS
COUNTY OF  SAN DIEGO )

[C.C.P. §§ 446, 2015.5; 28 U.S.C. §1746]

I, Maurice Knight     , am a resident of the State of California and am over the age of eighteen years and am not a party to the above-entitled action.   My address is listed below.

On X 8-11-08          , I served the following documents:

by placing a true copy thereof enclosed in a sealed envelope with First Class postage thereon fully prepaid in the United States Mail by delivering to prison officials for processing through the Institution's internal legal mail system at San Diego California, addressed as follows::

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed in the County of San Diego, California on X 8-11-08       .

Maurice Knight #G21298
F4/#18-117 up
P.O. Box 799004
San Diego, CA   92179-9004

Pursuant to the holding of the United States Supreme Court in Houston v. Lack 108 S. Ct. 2379, 487 U.S. 266, 101 L.Ed.2d 245 (1988) and FRAP, Rule 4 (c) inmate legal documents are deemed filed on the date they are delivered to prison staff for processing and mailing via the Institution's internal legal mail procedures.

EXHIBIT (A)

Incident No. 08040023407

# SAN DIEGO REGIONAL
## ARREST / JUVENILE CONTACT REPORT

**REPORT**

| | | |
|---|---|---|
| AGENCY NUMBER | 08040023407 | |
| SDSID BOOKING NUMBER | 8126585 | |

| WARRANT | AGENCY | ARJIS ASSISTED ? | PAGE |
|---|---|---|---|
| Out | SDPD | Y | 1 OF 8 |

| ARREST DATE | TIME | BEAT/DISTRICT | RELATED REPORTS (TYPE, NUMBER) | CITATION NUMBER |
|---|---|---|---|---|
| 04/12/2008 | 09:35 | 521 | 4-16-08 13:30 | 35,000 |

**CHARGE(S)**
11351.5 / HS / POSS/ETC BASE/ROCK COCAINE F/S     11350 (A) POSS NARCO     ADDN'L CHGS. Y     ADULT RELEASES

**PERSON ARRESTED (L, F, M)**
Elmore, Morris Larnard     198.9 (A) FALSE REP 3056 VOL PAROLE

**NICKNAME**

| D.O.B. | 10/21/1964 | P.O.B | Florida |
|---|---|---|---|

**ARRESTEE - CRIME**

| RACE | SEX | AGE | HEIGHT | WEIGHT | BUILD | HAIR | EYES |
|---|---|---|---|---|---|---|---|
| B | M | 43 | 5'08" | 220 | FAT | BLK | BRO |

**ALIAS/MAIDEN NAME (L, F, M)**
Tony, Willie

**ARRESTEE'S ADDRESS**
(Transient)     CITY     STATE   ZIP

| EMPLOYER/SCHOOL | MILITARY N | OCCUPATION/RANK None | HOME PHONE | BUSINESS PHONE |
|---|---|---|---|---|

**BUSINESS OR MILITARY ADDRESS**     CITY     STATE   ZIP

**EMERGENCY CONTACT/NEXT OF KIN (L, F, M)**

**EMERGENCY ADDRESS**     CITY     STATE   ZIP

| HOME PHONE | IS SUBJECT A SUSPECTED USER OF NARCOTICS/DRUG ? Y | INTERPRETER REQUIRED ? N | LANGUAGE | SUSPECT'S RELATION TO VICTIM(S) |
|---|---|---|---|---|

**LOCATION OF ARREST**
300 14TH ST     CITY     SAN DIEGO

**LOCATION OF OFFENSE**
300 14TH ST     CITY     SAN DIEGO

| OFFENSE DATE | OFFENSE TIME | CITIZEN ARREST ? N | ARRESTING OFFICER G MINTER | I.D. 6052 | ADMONISHED BY G MINTER | I.D. 6052 |
|---|---|---|---|---|---|---|
| 04/12/2008 | 09:09 | | | | | |

**DID YOU UNDERSTAND EACH OF THESE RIGHTS THAT I HAVE EXPLAINED TO YOU ?**
Refused

**HAVING IN MIND AND UNDERSTANDING YOUR RIGHTS AS I HAVE TOLD YOU, ARE YOU WILLING TO TALK WITH US ?**
Refused     STATEMENT

**ARRESTEE DESCRIPTION**

| HAIR LENGTH/TYPE | HAIR STYLE | FACIAL HAIR | COMPLEXION | SPEECH | VOICE |
|---|---|---|---|---|---|
| 5. Short | 1. Afro/Natural | 1. Clean Shaven | 2. Dark | 3. Mumbles | 4. Low Pitch |
| 1. Coarse | | | | 4. Offensive | 6. Monotone |
| | | | | 5. Quiet | |

**IDENTIFICATION NUMBERS**

| | |
|---|---|
| DRIVER'S LICENSE NO. | STATE |
| SOCIAL SECURITY NO. | 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 |
| FBI NO. | |
| CII NO. | A26272921 |
| OTHER I.D. | F03648   TYPE CD |

**FURTHER SUSPECT DESCRIPTION (I.E., GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, MANNERISMS, ETC.)**
Scar Stomach     UNDOCUMENTED PERSON N

**CLOTHING DESCRIPTION**
Black Hoodie, Green Shirt, Gray Sweatpants, Black Shoes

| SUSPECT VEHICLE | YEAR | MAKE | MODEL | COLOR / COLOR | BODY TYPE | LICENSE NO. | STATE |
|---|---|---|---|---|---|---|---|

**ADDITIONAL VEHICLE IDENTIFIERS (CHROME, DAMAGE, ETC.)**     VIN NUMBER     DISPOSITION OF VEHICLE

**REGISTERED OWNER (L, F, M)**

**REGISTERED OWNER'S ADDRESS**     CITY     STATE   ZIP

**EV.**

| PROPERTY TAG NOS. 052535, HQ067747 | 1.93 / .02 GRMS COCAINE BASE | DISPOSITION OF EVIDENCE Impounded HQ |
|---|---|---|

| REPORTING OFFICER G MINTER | I.D. 6052 | DIVISION C1 | REPORT DATE 04/12/2008 | TIME 15:03 |
|---|---|---|---|---|

ARJIS-8 (REV. 7-95 Electronic)     COPY

| PAGE 2 OF 8 | | | | | | | AGENCY NUMBER 08040023407 |

**COMPANIONS**

COMPANION'S NAME (L, F, M)
Crowley, Raymond Leroy

| ADDRESS | | | CITY SAN DIEGO | | | STATE CA | ZIP 92101 |
| PHONE | RACE B | SEX M | D.O.B. | ARRESTED Y | ADDITIONAL COMPANIONS LISTED | | N |

**VIC./WIT.**

VICTIM/WITNESS' NAME (L, F, M)
Johnson, Michael

| RESIDENT ADDRESS | | CITY | | STATE | ZIP |
| BUSINESS ADDRESS | | CITY | | STATE | ZIP |
| W | RP HOME PHONE | BUSINESS PHONE | RACE B | SEX M | D.O.B. | ADD'NL. VIC./WIT. LISTED N |

**JUVENILE ONLY**

| FATHER/STEPFATHER'S NAME (L, F, M) | | |
| FATHER/STEPFATHER'S ADDRESS | | HOME PHONE |
| CITY | STATE ZIP | BUSINESS PHONE |
| MOTHER/STEPMOTHER'S NAME (L, F, M) | | |
| MOTHER/STEPMOTHER'S ADDRESS | | HOME PHONE |
| CITY | STATE ZIP | BUSINESS PHONE |
| SCHOOL | GRADE LIVES WITH | |
| PARENTS NOTIFIED BY: WHOM AND HOW | DATE | TIME | RELEASE DATE | RELEASE TIME |
| FIELD DISP.: | | | | |
| ATTITUDE OF JUVENILE | ATTITUDE OF PARENTS / GUARDIAN | |

DET. DISPO.: ☐ Refer Court/Prob   ☐ Dept. Diversion   ☐ Counsel/Informal   ☐ Other:

ADDITIONAL CHARGES:11350(A)/HS/POSSESS NARCOTIC CONTROLLED SU;148.9(A)/PC/FALSE REPRESENTATION OF SELF T;3056:F/PC/VIOLATION PAROLE/FELONY;

**CITIZEN ARREST**

I have arrested:

I know that pursuant to Section 849 of the Penal Code of the State of California, it is necessary for me to sign a complaint stating the charge against the prisoner, which complaint must bemade before a magistrate, and I agree to sign said complaint and appear in said matter without delay.

Date: _____   Computer generated form, signature is not obtained; disclaimer read to the citizen.

ARRESTING CITIZEN (L, F, M)   PRINT

| RESIDENT ADDRESS | CITY | STATE ZIP |
| BUSINESS ADDRESS | CITY | STATE ZIP |
| HOME PHONE | BUSINESS PHONE | RACE | SEX | D.O.B |

**ADULT - MISD ONLY**

Check each reason for not releasing the subject with a written notice to appear.                    (ADULTS ONLY)

COPY

3)

| Continued From:<br>ARR/JUV. CON. | | San Diego Regional<br>Officer's Report Narrative | | Incident Number<br>08040023107 | |
|---|---|---|---|---|---|
| Page<br>3 of 8 | | | | Case Number | |
| Code Section And Description (one incident only)<br>11351.5 / HS / POSS/ETC BASE/ROCK COCAINE F/S | | Date<br>04/12/2008 | | Day of Week<br>SAT | Time<br>09:35 |
| Location Of Incident (Or Address)<br>300 14TH ST | | | City | District | Beat |
| Person(s) Involved: Victim | | | | | |
| Suspect (If Named)<br>Elmore, Morris Larnard | | | | | |
| Property Tag No.(s)<br>052535, HQ067747 | | | | | |

## SYNOPSIS:

On 04-12-08, Michael Johnson told me he witnessed Morris Elmore smoke cocaine using a pipe. I detained Elmore and his companion, Raymond Crowley. Crowley told me, in private, Elmore had cocaine base hidden in his pants. Elmore lied about his name and I transported him to police headquarters to verify his identity. I learned Elmore was on parole for drug sales. I found a large piece of off-white substance in my patrol car where Elmore was seated. I arrested Elmore for possession of a controlled substance for sales, possession of a controlled substance, false identification to a police officer, and a parole violation. I booked him into county jail

## ORIGIN:

On 04-12-08, at approximately 0905 hours, I was on patrol in the East Village community of San Diego. Based on my training and experience, I know this is a very high narcotics area. I spend a majority of my workday patrolling this area for narcotics related offenses. I have made numerous narcotics arrests in the East Village.

## INVESTIGATION:

Michael Johnson (███████), a concerned citizen, flagged me down while I was driving at 1400 K Street. Johnson told me he wants to keep the community clean of drugs. Johnson pointed to a group of 2 black male adults and 1 black female adult walking southbound at 300 14th Street. One of the black males was wearing a black "hoodie" sweatshirt. Johnson told me he watched the male with the black sweatshirt smoking cocaine with a pipe. Johnson also told me male with the sweatshirt had a pipe with him. I would later identify this male, using a prior booking photograph, as Morris Elmore (10-21-64)

I drove south on 300 14th Street watched the group slowing walking southbound. They did not appear to be in the area to conduct business. I drove up to the group, but did not activate my overhead emergency lights or block their path. I asked the group if they would, "Come over and talk to me." The group, including Elmore, stopped to speak with me. I asked anyone in the group if they were on probation or parole. The other male in the group, Raymond Crowley (08-15-70), told me he was on parole. The female in the group, Sonya Moore (███████), told me she was on probation for a narcotics arrest.

Based on the information from Johnson, my knowledge of the area, my narcotics experience and training, Crowley's parole and Moore's probation, I detained the group for loitering for narcotics.

| Reporting Officer<br>G MINTER | ID #<br>6052 | Division<br>C1 | Approved By | Date of Report<br>04/12/2008 | Time<br>15:03 |
|---|---|---|---|---|---|

COPY

Continued Y

| Continued From: ARR/JUV. CON. | San Diego Regional Officer's Report Narrative | | Incident Number 08040023407 | |
|---|---|---|---|---|
| Page 4 of 8 | | | Case Number | |
| Code Section And Description (one incident only) 11351.5 / HS / POSS/ETC BASE/ROCK COCAINE F/S | | Date 04/12/2008 | Day of Week SAT | Time 09:35 |
| Location Of Incident (Or Address) 300 14TH ST | | City | District | Beat |
| Person(s) Involved: Victim | | | | |
| Suspect (If Named) Elmore, Morris Larnard | | | | |
| Property Tag No.(s) 052535, HQ067747 | | | | |

I asked Elmore for his name and birthday. Elmore told me his name was "Willie Tony" and his birthday was 10-2-54. I repeatedly asked for Elmore's name and each time he told me, "Willie Tony." Elmore did not have identification on him. I was unable to verify his identity using my mobile computer.

As I communicated with Elmore, I noticed his speech was slurred. Elmore was sweating and his pupils were slightly dilated. I also detained Elmore while I evaluated if he was under the influence of a controlled substance.

I searched Crowley, based on his parole, and found a glass pipe in his pocket. I handcuffed him and placed him on the rear seat of my patrol car. As I placed him on the rear seat, he told me, "That guy has rock in his ass man." I know the term "rock" is street slang for cocaine base. I asked Crowley how he came to know this information. Crowley told me, "He showed it to me earlier."

I asked Elmore for possession to search him. Elmore told me, "Go ahead." I did not initially find contraband on Elmore. I did locate Elmore's brown wallet, which was in the waistband of his grey sweatpants. I looked inside of Elmore's wallet and found numerous currency bills, which were located in a very disorganized manner. Many of the bills were folded up. Based on my narcotics training and experience, I know when a drug dealer takes funds from a buyer, they will crumple the bill up and quickly put it into a location like a wallet or pocket.

I also located a cellular phone in Elmore's sweatshirt pocket, which he eventually took to jail with him.

I transported Elmore to police headquarters to verify his identity. I also transported Crowley to police headquarters to verify his parole conditions. I conducted a CAL-ID (fingerprints) of Elmore. He continually insisted his name was Willie Tony. While waiting for the results of the CAL-ID check, Crowley told me, "The guy pulled out the rock and put it under his ass. He asked me to take it, but I told him no!"

I removed Elmore from the patrol car. I looked under the seatbelt (next to Elmore) in my patrol car. I located a large "rock" of off-white substance, sealed in a piece of plastic. The rock was approximately 3 inches from where Elmore's hands were handcuffed. I recovered it as evidence.

The results of the CAL-ID search came back, and I learned Elmore was on parole for selling narcotics. Sergeant Salas (4442) authorized a strip search/visual body cavity search for Elmore. Sergeant Salas did this by signing the PD-2581 form. Sergeant Salas, Officer Massey (6310), and I took Elmore into Room 138 of headquarters. Room 138 is a secured room, away from public view. I ordered Elmore to remove his clothing, in order to verify he did not have additional contraband. As he removed his pants, a small piece of an off-white substance fell to the floor. Officer Massey directed my attention to the substance, as he saw it

| Reporting Officer G MINTER | ID # 6052 | Division C1 | Approved By | Date of Report 04/12/2008 | Time 15:03 |
|---|---|---|---|---|---|

| Continued From:<br>ARR/JUV. CON. | **San Diego Regional<br>Officer's Report Narrative** | Incident Number<br>08040023407 | |
|---|---|---|---|
| Page<br>5 of 8 | | Case Number | |

| Code Section And Description (one incident only)<br>11351.5 / HS / POSS/ETC BASE/ROCK COCAINE F/S | Date<br>04/12/2008 | | Day of Week<br>SAT | Time<br>09:35 |
|---|---|---|---|---|
| Location Of Incident (Or Address)<br>300 14TH ST | | City | District | Beat |

| Person(s) Involved: Victim |
|---|

| Suspect (If Named)<br>Elmore, Morris Larnard |
|---|
| Property Tag No.(s)<br>052535, HQ067747 |

fall. I recovered it as evidence. The small rock of off-white substance had a similar consistency as the large rock of off-white substance.

I impounded the two rocks of off-white substance at headquarters on tag #HQ067747. I impounded the $183 in cash at headquarters on tag #052535. There were (4) $20 bills, (2) $10 bills, (12) $5 bills, and (23) $1 bills. I issued Elmore a receipt for the currency, which he refused to sign.

I read Elmore his Miranda rights. Elmore refused to answer my questions.

Elmore possessed a large rock of off-white substance, a large amount of unorganized cash, and a cellular phone. Elmore was loitering in a high narcotics area, is on parole for narcotics sales, and did not possess any narcotic paraphernalia. Based on these observations, I believed Elmore possessed the controlled substance with the intent to sell it.

I was unable to reach Crowley and Elmore's parole agent, Agent Chandler (San Diego). I was unable to get a parole hold for Crowley, and issued him citation Y471747 for possession of narcotic paraphernalia. I released him at the scene.

I received a parole hold for Elmore through Sacramento, due to his new felony charges.

I booked Elmore into county jail for possession of a controlled substance for sales, possession of a controlled substance, false identification to a police officer, and a parole violation.

While booking Elmore into jail, he was verbally abusive. After I freed Elmore from his handcuffs, he took his pants down, grabbed onto and showed me his penis, and told me, "You can suck this." Twice.

## NARCOTIC EXPERIENCE:

I am a police officer with the San Diego Police Department and have been since October 2004. I am a court-recognized expert in the sales, packaging, and distribution of narcotics (02-05-07, DA #ABY51701). I am also a court-recognized expert regarding people under the influence of controlled substances (09-29-05, DA #ABO83001). I have manufactured methamphetamine and GHB, under the observation of DEA chemists. I have worked in the Narcotics section of the San Diego Police Department. I have posed as a narcotics user, and purchased narcotics in an undercover capacity. I have conducted surveillance on narcotics users and sellers, and have observed their foot and vehicle traffic patterns.

During my time as a police officer, I have investigated drug activity and am familiar with the manner in which drugs are packaged, marked and consumed. I have engaged drug users in conversations and have

| Reporting Officer<br>G MINTER | ID #<br>6052 | Division<br>C1 | Approved By | Date of Report<br>04/12/2008 | Time<br>15:03 |
|---|---|---|---|---|---|

| Continued From: ARR/JUV. CON. | San Diego Regional Officer's Report Narrative | | Incident Number 09040023407 |
|---|---|---|---|
| Page 6 of 8 | | | Case Number |

| Code Section And Description (one incident only) 11351.5 / HS / POSS/ETC BASE/ROCK COCAINE F/S | Date 04/12/2008 | Day of Week SAT | Time 09:35 |
|---|---|---|---|

| Location Of Incident (Or Address) 300 14TH ST | | City | District | Beat |
|---|---|---|---|---|

Person(s) Involved: Victim

Suspect (If Named)
Elmore, Morris Larnard

Property Tag No.(s)
052535, HQ067747

become familiar with the ordinary jargon used. I received 12 hours of formal training in the police academy where I learned the identification, symptomology and sales of many types of illegal drugs, including marijuana, cocaine, methamphetamine, PCP and heroin. After the academy, my training continued under a field-training program. I have also attended about three formal courses regarding the subject of narcotic usage. I have made, or have been involved with, over 100 arrests of individuals for being either under the influence of, or in possession of, controlled substances. I have obtained biological evidence from individuals suspected by me of being under the influence of a controlled substance and have seized items that I suspected to be narcotics that were later tested scientifically with positive results.

## BACKGROUND:

Prior to the beginning of my shift, I searched the back seat of my patrol car for contraband. I did not locate any contraband, and I noted this in my Officer's Daily Journal. Earlier in the afternoon I transported another prisoner using my patrol vehicle. After releasing the prisoner, I again checked the rear seat of my patrol vehicle. I did not locate contraband.

## STATEMENTS:

None.

## EVIDENCE:

I impounded $183 in cash at headquarters on tag 052535. I impounded 1 large rock of off-white substance and 1 small rock of off-white substance on tag HQ067747.

## INJURIES:

None.

## PROPERTY DAMAGE:

None.

## FOLLOW-UP:

None.

## RELATED REPORTS:

| Reporting Officer G MINTER | ID # 6052 | Division C1 | Approved By | Date of Report 04/12/2008 | Time 15:03 |
|---|---|---|---|---|---|

COPY                                                                 Continued Y

| Continued From:<br>ARR/JUV. CON. | **San Diego Regional<br>Officer's Report Narrative** | | Incident Number<br>08040023407 | |
|---|---|---|---|---|
| Page<br>7 of 8 | | | Case Number | |
| Code Section And Description (one incident only)<br>11351.5 / HS / POSS/ETC BASE/ROCK COCAINE F/S | Date<br>04/12/2008 | Day of Week<br>SAT | Time<br>09:35 | |
| Location Of Incident (Or Address)<br>300 14TH ST | | City | District | Beat |
| Person(s) Involved: Victim | | | | |
| Suspect (If Named)<br>Elmore, Morris Larnard | | | | |
| Property Tag No.(s)<br>052535, HQ067747 | | | | |

None.

Approved By: Sgt P. E. Schneider #3333

| Reporting Officer<br>G MINTER | ID #<br>6052 | Division<br>C1 | Approved By | Date of Report<br>04/12/2008 | Time<br>15:03 |
|---|---|---|---|---|---|

COPY                                                    **Continued Y**

| Continued From:<br>ARR/JUV. CON. | --- | San Diego Regional<br>Officer's Report Narrative | Incident Number<br>08040023-107 | |
|---|---|---|---|---|
| Page<br>8 of 8 | | | Case Number | |

| Code Section And Description (one incident only)<br>11351.5 / HS / POSS/ETC BASE/ROCK COCAINE F/S | Date<br>04/12/2008 | Day of Week<br>SAT | Time<br>09:35 | |
|---|---|---|---|---|
| Location Of Incident (Or Address)<br>300 14TH ST | | City | District | Beat |

Person(s) Involved: Victim

| Suspect (If Named)<br>Elmore, Morris Larnard |
|---|
| Property Tag No.(s)<br>052535, HQ067747 |

| Reporting Officer<br>G MINTER | ID #<br>6052 | Division<br>C1 | Approved By | Date of Report<br>04/12/2008 | Time<br>15:03 |
|---|---|---|---|---|---|

COPY                                    Continued Y

# SAN DIEGO POLICE DEPARTMENT
## INVESTIGATOR'S FOLLOW-UP REPORT
### FELONY NARCOTIC ARREST

Date: **4-12-08**          Time: **0135**

Location: **300 14TH**

| SUSPECT: | BOOKING INFORMATON: |
|---|---|
| NAME: **ELMORE, MORRIS**<br><br>DOB: **10-21-69** | #: **8126585**<br><br>CHARGES: **11350 (A) Poss NARCO**<br>**3056    11351.5 Poss NARCO**<br>**VIOL.    148.9 (A) FALSE REP**<br>**PAROLE**<br><br>IN CUSTODY: **X** YES ____ NO |

**F15**

| NARCOTIC TAG(S): | TEST RESULTS |
|---|---|
| **H/Q 067797** | **1.93** )<br>**.02** / **GRMS Cocaine Base** |

Arresting Officer: **MINTER 6052**

Investigating Officer: **KATHAN 2931**

Included with this report art he following:
- [X] Arrest Report
- [X] Presumptive Test Results
- [X] Investigator's Follow-up
- [ ] Photographs

CASE SUMMARY:
On **4-12-08** , at approximately **0135** hours, Officer **MINTER**
Contacted **ELMORE** at **300 14TH**
As described in the attached report, **ELMORE** was arrested for
**11350 (A), 11351.5, 148.9 (A), 3056** .

The presumptive narcotic test results were (see above). Therefore, I request that
**MINTER** be charged with **THE ABOVE LISTED CHARGES** .

Investigation Officer: **KATHAN** _____ Central/NARCO (619) 744-9549

Approved by: **SGT** _____ Date: **9/14/08** Time: **12:30**

10.

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION

## PAROLE REVOCATION HEARING NOTICE AND WITNESS DETERMINATION

CDCR 1654  (Rev. 08/05)

PAGE __1__ of __1__ PAGES

### SECTION I - PAROLEE INFORMATION

| CDCR NUMBER | NAME (LAST, FIRST, MI) | | | |
|---|---|---|---|---|
| E036088 | ELMORE, MORRIS | | | |
| AGENT OF RECORD | PAROLE UNIT | TYPE OF HEARING: | | VIOLATION REPORT DATED: |
| Jacqueline Chandler | SD #2 | ☒ REVOCATION  ☐ REVOCATION EXTENSION  ☐ PSYCHIATRIC TREATMENT | | 4/21/08 |

☒ CUSTODY LOCATION   SDCJ
☐ NOT IN CUSTODY: (ADDRESS)

HEARING SCHEDULED FOR: (DATE)_____ (TIME)_____ (HEARING LOCATION) _____

### SECTION II - WITNESSES BEING CALLED

| WITNESSES BEING CALLED | BADGE NUMBER | NOTIFIED | | WIT. DESIG.** | |
|---|---|---|---|---|---|
| | | *METH | DATE | STATUS | REQ. |
| 1. G. Minter | 6052 | | | | |
| 2. SDPD Massey | 6310 | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| **FEARFUL WITNESSES** | **REASON:** | | | | |
| 7. | | | | | |
| 8. | | | | | |

*NOTIFICATION METHOD
M - MEMO        PC - PERSONAL CONTACT
L  - LETTER      SP - SUBPOENA
PH - PHONE      PN - PAROLEE NOTIFY

**USE ABBREVIATION FOR WITNESS DESIGNATION
STATUS:
A - ADVERSE            F - FRIENDLY
FW - FEARFUL WITNESS   V - VICTIM

REQUESTED BY:
S - STATE
P - PAROLEE

### SECTION III - ATTORNEY INFORMATION

| ATTORNEY OF RECORD | ADDRESS (STREET, CITY, ZIP) | | TELEPHONE NUMBER |
|---|---|---|---|
| PAROLEE / ATTORNEY COPIES PROVIDED (DATE): | MAILED BY: | DELIVERED BY: | |
| ADDRESS (STREET, CITY, ZIP) | | TELEPHONE NUMBER | |

### SECTION IV - ADDRESSES OF WITNESSES BEING CALLED

1. 1401 Broadway, San Diego CA. 92101   619 531-2845
2. 1401 Broadway, San Diego CA. 92101   619 531-2845
3.
4.
5.
6.

### SECTION V - FEARFUL WITNESS CONTACT INFORMATION

| | NAME | ADDRESS | TELEPHONE NUMBER |
|---|---|---|---|
| 7. | | | |
| 8. | | | |

DISTRIBUTION:
ORIGINAL-REVOCATION PACKAGE -WHITE,  1ST COPY -BPH -GREEN,  2ND COPY-AGENT OF RECORD-YELLOW,  3RD COPY-PAROLEE'S COPY-PINK,  4TH COPY-ATTORNEY'S COPY-GOLD

From:SDPD CRIME LAB              619 531 2520          04/14  08 11:15    #860 P.008/009



**SAN DIEGO POLICE DEPARTMENT**
**Forensic Science Section**

**PRELIMINARY Narcotics Analysis Report**



AN ASCLD/LAB ACCREDITED LABORATORY

| | |
|---|---|
| **SUSPECT:** | ELMORE, MORRIS |
| **IMPOUND #:** | 067747 |
| **INCIDENT TYPE:** | NARCOTICS |
| **INCIDENT DATE:** | 4/12/2008 |
| **OFFICER/DIVISION:** | MINTER/CENTRAL |
| **CRIMINALIST:** | LARRY DALE |

**ITEMS EXAMINED:**

Item 1: 1 plastic baggie containing rock-like material.
Item 2: 1 plastic baggie containing rock-like material.

**EXAMINATION RESULTS:**

Item 1 was examined and found to have a net weight of 1.43 grams. Item 1 contains cocaine base. This evidence was analyzed using a combination of color and crystal tests.

Item 2 was examined and found to have a net weight of 0.02 grams. Item 2 contains cocaine base. This evidence was analyzed using a combination of color and crystal tests.

**ADDITIONAL INFORMATION:**

None.

**DISPOSITION OF EVIDENCE:**

All evidence was returned to the Narcotics Vault.

**Larry Dale 8166**
**Criminalist**
**Forensic Chemistry Section**
**4/14/2008**

Technical Review: _____ Date: 4/14/08  Administrative Review: _____ Date: 4/14/08

All weights were established at the time of the preliminary examination.



**THE CITY OF SAN DIEGO**
**POLICE DEPARTMENT**

Incident # *0804002340 7*

# STRIP SEARCH / VISUAL BODY CAVITY SEARCH*
## AUTHORIZATION

I, _PAUL H. SALAS, SGT, 4442_____ , authorize
<span>PRINT SUPERVISOR'S NAME, RANK, ID #</span>

_GREG MENTOR, POII, 6052_____ , (M)/F)
<span>PRINT SEARCHER'S NAME, RANK, ID #    CIRCLE SEARCHER'S GENDER</span>

to conduct a ☒ strip search ☐ visual body cavity search of

_ELMORE, MORRIS. L._____ , (M)/F)
<span>PRINT SUBJECT'S NAME    CIRCLE SUBJECT'S GENDER</span>

on _APRIL, 12 2008_ at _SDPD HQ, 1401 BROADWAY SU_
<span>PRINT DATE & TIME    PRINT LOCATION OF SEARCH</span>

pursuant to Penal Code Section 4030 and in accordance with Department Policy 6.01 (II.B.7).

As the supervisor authorizing this search, I believe that the subject is concealing a weapon or contraband based on the following **SPECIFIC FACTS** related to this arrest:

_ON PAROLE FOR POSS. OF SALES OF A CONT. SUBSTANCE, IS UNDER ARREST FOR_
_POSS. OF A CONTROLLED SUBSTANCE._

This search meets **ALL** the following requirements:
☒ The subject to be searched has been lawfully arrested for an offense involving:
☐ weapons ☒ controlled substance(s) ☐ violence.
☒ The person conducting the search is of the same gender as the subject to be searched.
☒ The search will be conducted in an area of privacy such that it may not be observed by any persons not participating in the search.
☒ This form was completed and the supervisor's authorization was given prior to conducting a search.

Results of the search (including a list of items removed from the subject):
_1 SMALL "ROCK" OF OFF-WHITE SUBSTANCE (ALL CLOTHES REMOVED)_

Signature of Officer Conducting Search    _04-12-08_
                                          Date

_#4442_    _04-12-08_
Signature of Supervisor Authorizing Search    Date

**THIS FORM MUST BE COMPLETED _BEFORE_ EVERY STRIP SEARCH OR VISUAL BODY CAVITY SEARCH. NON-COMPLIANCE WITH THE REQUIREMENTS OF PENAL CODE SECTION 4030 IS A MISDEMEANOR.**

\* "strip search" – a search which requires a person to remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such person (P.C. 4030 (c)).

"visual body cavity search" – a visual inspection of a body cavity, which is only the stomach or rectal cavity of a person, and vagina of a female person (P.C. 4030 (d)(1)(2)).

♻ Printed on recycled paper    *This information is available in alternative formats upon request.*

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT 53                    BEFORE HON. FREDERICK MAGUIRE

Exhibit (B)

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, ) PLAINTIFF, ) VS. ) MORRIS ELMORE, ) DEFENDANT. ) | ) CASE NO. CD213010<br>) DA NO. ACG304<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) PRELIMINARY HEARING |

REPORTER'S TRANSCRIPT
APRIL 29, 2008
PAGES 1-57

F I L E D
Clerk of the Superior Court
APR 3 0 2008
By C. ELMORE, Deputy

APPEARANCES:

FOR THE PEOPLE:              BONNIE DUMANIS
                            DISTRICT ATTORNEY
                            BY:  JULIANNE KARR
                            DEPUTY DISTRICT ATTORNEY


FOR THE DEFENDANT:          STEVEN J. CARROLL
                            PUBLIC DEFENDER
                            BY:  DAVID THOMPSON
                            DEPUTY PUBLIC DEFENDER



CHRISTINE EDDY, CSR NO. 13000
OFFICIAL COURT REPORTER
SAN DIEGO, CA 92101


COPY

1

1       SAN DIEGO, CALIFORNIA; TUESDAY, APRIL 29TH, 2008;

2                             9:15 A.M.

3           THE COURT:  LET'S GO ON THE RECORD WITH PEOPLE

4       VERSUS MORRIS ELMORE, CD213010.  APPEARANCES, PLEASE.

5           MS. KARR:  GOOD MORNING, YOUR HONOR.  JULIANNE

6       KARR ON BEHALF OF THE PEOPLE.

7           MR. THOMPSON:  DAVID THOMPSON, OFFICE OF THE

8       PUBLIC DEFENDER, ON BEHALF OF MR. ELMORE, WHO IS PRESENT

9       IN CUSTODY.

10          THE COURT:  PRELIMINARILY, I TRUST THERE IS A

11      MOTION TO EXCLUDE.  PEOPLE, HOW MANY WITNESSES DO YOU

12      HAVE?

13          MS. KARR:  WE HAVE ONE, YOUR HONOR.

14          THE COURT:  ANYTHING ELSE, PRELIMINARILY?

15          MS. KARR:  YES, YOUR HONOR.  AT THIS TIME, THE

16      PEOPLE MOVE TO DISMISS COUNT 1, HEALTH AND SAFETY CODE

17      SECTION 11351.5, BASED OFF OF INSUFFICIENT EVIDENCE AT

18      THIS TIME.

19          THE COURT:  ALL RIGHT.  SO YOU WANT TO ARGUE

20      THAT?

21          MR. THOMPSON:  NO, YOUR HONOR.

22          THE COURT:  THAT'S GRANTED.  AND THEN, NUMBER

23      TWO?

24          MS. KARR:  EXCUSE ME, YOUR HONOR?

25          THE COURT:  NUMBER TWO?  YOU ARE STILL

26      STANDING.

27          MS. KARR:  THE PEOPLE ARE READY TO PROCEED.

28          THE COURT:  ANYTHING ELSE, PRELIMINARILY, MR.

1  THOMPSON?

2          **MR. THOMPSON:**  NO, YOUR HONOR.

3          **THE COURT:**  GO AHEAD.  JUST CALL YOUR WITNESS,

4  PLEASE.

5          **MS. KARR:**  THE PEOPLE CALL OFFICER GREGORY

6  MINTER.

7          **GREGORY MINTER,**

8  CALLED BY THE PEOPLE, AFTER HAVING BEEN DULY SWORN,

9  TESTIFIED AS FOLLOWS:

10          **THE WITNESS:**  I DO.

11          **THE CLERK:**  THANK YOU.  PLEASE HAVE A SEAT AT

12  THE WITNESS STAND.  PLEASE STATE YOUR FULL NAME AND

13  SPELL YOUR LAST NAME FOR THE RECORD.

14          **THE WITNESS:**  SURE.  IT'S GREGORY MINTER,

15  M-I-N-T-E-R.

16          **THE CLERK:**  THANK YOU.

17          **DIRECT EXAMINATION**

18  BY MS. KARR:

19      Q.   HOW ARE YOU EMPLOYED?

20      A.   AS A POLICE OFFICER WITH THE SAN DIEGO POLICE

21  DEPARTMENT.

22      Q.   HOW LONG HAVE YOU BEEN A SWORN PEACE OFFICER?

23      A.   ABOUT THREE YEARS.

24      Q.   HAVE YOU SUCCESSFULLY COMPLETED A TRAINING

25  COURSE CERTIFIED BY THE COMMISSION ON PEACE OFFICERS

26  STANDARDS AND TRAINING, WHICH INCLUDES TESTIFYING AT

27  PRELIMINARY EXAMINATIONS?

28      A.   YES, I HAVE.

1    Q.    WHAT IS YOUR CURRENT ASSIGNMENT?

2    A.    I'M ASSIGNED TO PATROL IN OUR CENTRAL

3  DIVISION.

4    Q.    CAN YOU PLEASE DESCRIBE YOUR FORMAL TRAINING

5  AND ON-THE-JOB EXPERIENCE REGARDING RECOGNITION OF AND

6  USABLE QUANTITIES OF CONTROLLED SUBSTANCES, SPECIFICALLY

7  COCAINE BASE.

8    A.    SURE.  I HAD 12 HOURS OF FORMAL TRAINING IN

9  THE ACADEMY.  I'VE MADE ABOUT 150 ARRESTS FOR

10  POSSESSION; ABOUT 30 FOR SALES.  I'M A MEMBER OF THE

11  CALIFORNIA NARCOTICS OFFICERS ASSOCIATION.  I HAVE

12  WORKED WITH OUR NARCOTICS TEAM, PURCHASING COCAINE BASE

13  IN AN UNDERCOVER CAPACITY.  I HAVE TESTIFIED AS AN

14  EXPERT FOR SALES AND POSSESSION OF COCAINE.

15    Q.    WERE YOU ON DUTY APRIL 12, 2008, APPROXIMATELY

16  9:00 A.M.?

17    A.    YES, I WAS.

18    Q.    AT THAT TIME, DID YOU RECEIVE A STATEMENT FROM

19  A CONCERNED CITIZEN REGARDING A GROUP LOITERING IN THE

20  AREA OF 300 14TH STREET?

21    A.    YES, I DID.

22    Q.    IS THAT IN SAN DIEGO COUNTY?

23    A.    IT IS.

24    Q.    CAN YOU PLEASE DESCRIBE WHAT THAT CONCERNED

25  CITIZEN TOLD YOU.

26    A.    SURE.  HE TOLD ME THAT THE GROUP HAD BEEN

27  SMOKING COCAINE AND THAT ONE OF THEM WEARING -- A MALE

28  WEARING A BLACK HOODIE STILL HAD A PIPE IN HIS POCKET

4

1    AND THAT THEY WERE WALKING SOUTHBOUND ON 14TH.

2        Q.    DID THE CONCERNED CITIZEN YOU SPOKE WITH, DID

3    THAT CITIZEN POINT OUT THAT GROUP TO YOU?

4        A.    YES, HE DID.

5        Q.    AND APPROXIMATELY HOW FAR WAS THAT GROUP FROM

6    YOU AT THAT TIME?

7        A.    MAYBE 100 -- 150 FEET.

8        Q.    DID YOU HAVE A CLEAR VISUAL OF THAT GROUP?

9        A.    YES, I DID.

10        Q.    WHAT DID YOU DO AFTER YOU SPOKE WITH THE

11    CONCERNED CITIZEN?

12        A.    I DROVE SOUTHBOUND ON 14TH AND CONTACTED THE

13    GROUP.

14        Q.    AT THAT TIME, DID YOU OBSERVE AN INDIVIDUAL

15    KNOWN AS MORRIS ELMORE WITHIN THAT GROUP?

16        A.    YES, I DID.

17        Q.    DO YOU SEE THAT INDIVIDUAL IN THE COURTROOM

18    TODAY?

19        A.    I DO.

20        Q.    COULD YOU PLEASE POINT OUT THAT INDIVIDUAL AND

21    DESCRIBE AN ARTICLE OF CLOTHING THAT INDIVIDUAL IS

22    WEARING.

23        A.    YES.  HE IS SEATED AT DEFENDANT'S TABLE,

24    WEARING THE BLUE JUMPSUIT.

25        **THE COURT:**  THE RECORD WILL REFLECT

26    IDENTIFICATION OF MR. THOMPSON'S CLIENT.

27        **MS. KARR:**  THANK YOU, YOUR HONOR.

28

**BY MS. KARR:**

    Q.   WHAT DID YOU DO WHEN YOU APPROACHED THE GROUP?

    A.   I PULLED UP NEXT TO THEM ON THE STREET AND ASKED -- I SAID, "CAN I TALK TO YOU?"

    Q.   WHAT DID THEY SAY?

    A.   ONE OF THEM, NOT MR. MORRIS, WALKED OVER TO ME AND SAID, "SURE," SO I STARTED TALKING TO HIM.

    Q.   WHAT HAPPENED?

    A.   I ASKED IF THEY WERE ON PROBATION OR PAROLE. ONE IN THE GROUP SAID PROBATION; ONE IN THE GROUP SAID PAROLE. MR. ELMORE SAT ON THE SIDEWALK.

    Q.   DID ANY OF THOSE INDIVIDUALS MATCH THE DESCRIPTION PROVIDED BY THE CONCERNED CITIZEN AS THE INDIVIDUAL THAT WAS SMOKING THE COCAINE?

    A.   YES.

    Q.   WHO MATCHED THAT DESCRIPTION?

    A.   MR. ELMORE WAS WEARING THE HOODIE.

    Q.   AFTER YOU -- AFTER THE OTHER TWO INDIVIDUALS ADMITTED THEY WERE ON EITHER PROBATION OR PAROLE, WHAT HAPPENED?

    A.   I DETAINED THE WHOLE GROUP FOR LOITERING WITH THE INTENT TO USE NARCOTICS.

    Q.   DID YOU ASK THE DEFENDANT FOR IDENTIFICATION?

    A.   I DID.

    Q.   AND WHAT HAPPENED?

    A.   HE TOLD ME HE DIDN'T HAVE ANY AND TOLD ME HIS NAME WAS WILLIE TONY.

    Q.   WAS HE ABLE TO PROVIDE A DATE OF BIRTH?

1 A. YES, HE WAS.

2 Q. DID YOU ATTEMPT TO CONFIRM HIS IDENTIFICATION?

3 A. I DID.

4 Q. WAS HE ABLE TO PROVIDE ANY FORM OF

5 IDENTIFICATION?

6 A. NO, HE WAS NOT.

7 Q. DID YOU ATTEMPT TO IDENTIFY HIM USING YOUR

8 MOBILE COMPUTER FROM YOUR PATROL VEHICLE?

9 A. YES.

10 Q. WERE YOU SUCCESSFUL?

11 A. NO.

12 Q. WHAT DID YOU DO AT THAT POINT?

13 A. AT THAT POINT, I CONTACTED ANOTHER INDIVIDUAL

14 IN THE GROUP, WHO SAID HE WAS ON PAROLE, AND DEALT WITH

15 HIM ON THE SIDE.  I EVENTUALLY TRANSPORTED MR. ELMORE

16 DOWNTOWN TO CONFIRM HIS IDENTITY.

17 Q. I WANT TO SPEAK ABOUT THE OTHER INDIVIDUAL FOR

18 A MOMENT.  ARE YOU AWARE OF THE NAME OF THAT OTHER

19 INDIVIDUAL YOU ARE REFERRING TO?

20 A. MR. CROWLEY.

21 Q. AND, AT SOME POINT DURING -- WHILE SPEAKING

22 WITH THIS GROUP, DID YOU YOU PLACE MR. CROWLEY UNDER

23 ARREST?

24 A. I DID.

25 Q. DID YOU PLACE HIM IN YOUR PATROL VEHICLE?

26 A. YES.

27 Q. WHEN YOU PLACED HIM IN YOUR PATROL VEHICLE,

28 DID HE MAKE ANY VOLUNTARY STATEMENTS?

1    A.    YES, HE DID.

2    Q.    WHAT DID HE SAY?

3    A.    AS SOON AS I PLACED HIM IN THE BACKSEAT, HE

4    TOLD ME THAT MR. ELMORE HAD A ROCK IN HIS BUTT CHEEK.

5    Q.    HE WAS REFERRING TO THE DEFENDANT?

6    A.    YES.

7    Q.    DID YOU ASK HIM HOW HE KNEW THIS?

8    A.    YEAH, I DID.

9    Q.    WHAT DID THEY SAY?

10    A.    HE TOLD ME THAT HE SHOWED IT TO HIM EARLIER.

11    AND HE DIDN'T KNOW MR. ELMORE'S NAME, BUT HE SAID, "THAT

12    GUY SHOWED IT TO ME EARLIER."

13    Q.    MR. CROWLEY SAID THAT THE DEFENDANT SHOWED IT

14    TO HIM EARLIER?

15    A.    YES.

16    Q.    SO WHAT DID YOU DO AT THAT POINT?

17    A.    I WENT OVER AND TALKED TO MR. ELMORE, AND HE

18    GAVE ME CONSENT TO SEARCH HIM.  I SEARCHED HIM.  I

19    DIDN'T FIND ANYTHING EXCEPT MONEY.

20    Q.    AT THAT TIME, WAS THE MONEY OF SIGNIFICANCE TO

21    YOU?

22    A.    IT WAS.

23    Q.    WHY IS THAT?

24    A.    THERE WERE A LOT OF SMALL BILLS, CRUMPLED UP

25    INSIDE THE WALLET IN AN UNORGANIZED MANNER.

26    Q.    WHY DID THE MANNER OF HOW THE MONEY WAS IN THE

27    WALLET HAVE SIGNIFICANCE TO YOU?

28    **MR. THOMPSON:**  OBJECTION.  RELEVANCE.  COUNT 1

1    HAS BEEN DISMISSED.

2             **THE COURT:**  SUSTAINED.

3    **BY MS. KARR:**

4        Q.    DID YOU HAVE AN OPPORTUNITY TO OBSERVE THE

5    DEFENDANT'S BEHAVIOR WHILE YOU WERE SPEAKING WITH HIM?

6        A.    YES, I DID.

7        Q.    DID HIS SPEECH APPEAR SLURRED TO YOU?

8        A.    IT DID.

9        Q.    DID HE APPEAR TO BE SWEATING PROFUSELY?

10       A.    YES.

11            **MR. THOMPSON:**  OBJECTION.  LEADING.

12            **THE COURT:**  OVERRULED.  THE ANSWER IS OUT

13   ALREADY ANYWAY.

14   **BY MS. KARR:**

15       Q.    DID YOU HAVE THE OPPORTUNITY TO OBSERVE HIS

16   PUPILS?

17       A.    YES.

18       Q.    WHAT DID YOU NOTICE?

19       A.    THEY WERE SLIGHTLY DILATED.

20       Q.    BASED OFF YOUR TRAINING AND EXPERIENCE, DID

21   YOU BELIEVE THE DEFENDANT TO BE UNDER THE INFLUENCE OF A

22   CONTROLLED SUBSTANCE?

23       A.    YES, I DID.

24       Q.    AT SOME POINT, DID YOU PLACE THE DEFENDANT

25   UNDER ARREST AS WELL?

26       A.    YES.

27       Q.    DID YOU PLACE HIM IN THE SAME PATROL VEHICLE

28   WHERE YOU PLACED MR. CROWLEY?

1    A.    YES, I DID.

2    Q.    CAN YOU PLEASE DESCRIBE WHERE THEY WERE BOTH

3    POSITIONED IN THAT VEHICLE. *NEED Video*

4    A.    YES.    THEY WERE BOTH IN THE BACKSEAT.    MR.

5    CROWLEY WAS BEHIND ME, AND I WAS IN THE DRIVER'S SEAT.

6    MR. ELMORE WAS IN THE BACK PASSENGER -- BEHIND THE

7    PASSENGER SEAT.

8    Q.    SO THE BACK, RIGHT PORTION OF THE PATROL

9    VEHICLE?

10    A.    YES.

11    Q.    AT THAT TIME, WERE THEY -- WERE BOTH

12    DEFENDANTS HANDCUFFED -- OR, EXCUSE ME -- WAS THE

13    DEFENDANT AND MR. CROWLEY BOTH HANDCUFFED?

14    A.    YES, THEY WERE.

15    Q.    DID YOU SEARCH YOUR VEHICLE PRIOR TO PLACING

16    THE DEFENDANT AND MR. CROWLEY IN THE VEHICLE?

17    A.    YES, I DID.

18    Q.    AT THAT TIME, DID YOU FIND ANY CONTROLLED

19    SUBSTANCES WITHIN YOUR VEHICLE?

20    A.    NO.

21    Q.    DID YOU THEN TRANSPORT THE DEFENDANT AND MR.

22    CROWLEY TO HEADQUARTERS? *← At Head Quarters on*

23    A.    YES.    *Video Camera.*

24    Q.    WHAT DID YOU DO AT HEADQUARTERS?

25    A.    I TOOK MR. ELMORE'S FINGERPRINTS, JUST TO

26    CONFIRM HIS IDENTITY.    AND I JUST BEGAN PROCESSING MR.

27    CROWLEY.

28    Q.    DID MR. CROWLEY MAKE ANY ADDITIONAL VOLUNTARY

1    STATEMENTS TO YOU?

2        A.    HE DID.

3        Q.    AND WHAT DID HE SAY?

4        A.    HE REPEATEDLY TOLD ME THAT MR. ELMORE HAD THE

5    COCAINE IN HIS BUTT CHEEKS AND THAT, AT ONE POINT, WHILE

6    I WAS AWAY FROM THE CAR, THAT MR. ELMORE HAD TRIED TO

7    GIVE HIM THE COCAINE. *NEED video* ← *Head Quarters*

8        Q.    DID YOU SUBSEQUENTLY SEARCH THE BACKSEAT OF

9    YOUR PATROL VEHICLE AFTER YOU HAD REMOVED THE DEFENDANT

10    AND MR. CROWLEY?

11        A.    I DID.

12        Q.    DID YOU FIND ANYTHING OF SIGNIFICANCE?

13        A.    YES, MA'AM.

14        Q.    WHAT DID YOU FIND? *NEED video (To Prove He*

15        A.    A LARGE PIECE OF ROCK COCAINE. *Found Rock*

16        Q.    CAN YOU PLEASE DESCRIBE EXACTLY WHERE YOU

17    LOCATED THAT PIECE, THAT SUBSTANCE YOU BELIEVED TO BE

18    ROCK COCAINE? *At Police HEAD Quarters ON video*

19        A.    YES.    IT WAS ON THE -- OR TOWARDS THE RIGHT

20    PASSENGER SIDE, UNDERNEATH THE SEATBELT, I GUESS, THE

21    FASTENER, RIGHT -- JUST TO THE LEFT OF WHERE MR. ELMORE

22    WOULD HAVE BEEN. *Evidence → video*

23        Q.    SO IT WOULD HAVE BEEN THE SMALLER BELT BUCKLE,

24    SO TO SPEAK?

25        A.    YES.

26        Q.    AND IT WAS UNDERNEATH THAT STRAP?

27        A.    IT WAS.

28        Q.    WAS IT ESSENTIALLY CRAMMED UNDERNEATH THERE?

1    OR HOW WOULD YOU DESCRIBE ITS POSITIONING?

2         A.   IT WAS JUST, I GUESS, SITTING ON THE SEAT, AND

3    THEN THE SEATBELT WAS JUST COVERING IT.

4         Q.   AND APPROXIMATELY HOW MANY INCHES WAS THAT

5    FROM THE DEFENDANT?   *video, video, video*

6         A.   THREE, ABOUT.

7         Q.   THREE INCHES?

8         A.   YES.

9         Q.   AND APPROXIMATELY HOW FAR WAS THAT SUBSTANCE

10   YOU BELIEVED TO BE COCAINE BASE FROM MR. CROWLEY?

11        A.   PROBABLY 12 INCHES.

12        Q.   WOULD IT HAVE BEEN FAIRLY DIFFICULT FOR MR.

13   CROWLEY TO PLACE IT IN THAT POSITION, GIVEN THAT HIS

14   HANDS WERE HANDCUFFED?

15             MR. THOMPSON:  OBJECTION.  SPECULATION.  CALLS

16   FOR SPECULATION.

17             THE COURT:  SUSTAINED, ON OTHER GROUNDS.

18   BY MS. KARR:

19        Q.   I JUST WANT TO CLARIFY.  DURING THE ENTIRE

20   TIME YOU TRANSPORTED THE DEFENDANT AND MR. CROWLEY, THEY

21   WERE BOTH HANDCUFFED?

22        A.   YES, THEY WERE.

23        Q.   WERE THEY ALSO BELTED INTO THE VEHICLE?

24        A.   NO.   *← why?*

25        Q.   THEY WERE NOT?   *← Even the DA is surprised/Law*

26        A.   THEY WERE NOT.   *←*

27        Q.   WHEN YOU WERE DRIVING, THE ENTIRE TIME, DID

28   YOU EVER OBSERVE MR. CROWLEY MOVE OVER TOWARDS THE

1  DEFENDANT'S SIDE OF THE VEHICLE?

2      A.   I DID NOT.

3      Q.   AFTER YOU SEARCHED THE VEHICLE, WHAT HAPPENED?

4      A.   I TOOK MR. ELMORE OUT, SEARCHED THE VEHICLE,

5  AND FOUND THE COCAINE AND RECOVERED IT. *NEED VIDEO*

6      Q.   DID YOU LATER GO TO CONFIRM THE RESULTS OF THE

7  CAL I.D. CHECK --

8      A.   I DID.

9      Q.   THE COMPUTER CHECK?

10     A.   I DID.

11     Q.   AND WHAT DID YOU LEARN?

12     A.   I LEARNED THAT MR. ELMORE WAS ON PAROLE FOR

13  NARCOTICS OFFENSES.

14     Q.   DID YOU ALSO LEARN AT THAT TIME THAT HIS TRUE

15  NAME WAS MORRIS ELMORE?

16     A.   I DID.

17     Q.   DID YOU ASK FOR A STRIP SEARCH OF THE

18  DEFENDANT TO BE PERFORMED?

19     A.   YES, I DID.

20     Q.   WAS A STRIP SEARCH, IN FACT, PERFORMED?

21     A.   YES.

22     Q.   COULD YOU PLEASE DESCRIBE WHAT HAPPENED.

23     A.   YES.  WE HAVE TO GET A SUPERVISOR'S APPROVAL

24  TO DO THAT, SO ONE OF OUR SERGEANTS CAME AND WITNESSED

25  THE STRIP SEARCH, AND ALSO ANOTHER OFFICER TOOK HIM TO A

26  PRIVATE ROOM, AWAY FROM EVERYONE ELSE, AND MADE SURE

27  THERE WAS NO CONTRABAND IN THERE AT ALL, AND ORDERED HIM

28  TO TAKE OFF HIS CLOTHES.

1    Q.   DID YOU OBSERVE ANYTHING WHEN THE DEFENDANT

2    BEGAN REMOVING HIS CLOTHES?

3    A.   OFFICER MASSEY OBSERVED A SMALL PIECE OF

4    COCAINE FALL FROM MR. ELMORE'S PANTS.

5    Q.   COULD YOU PLEASE SPELL OFFICER MASSEY'S NAME

6    FOR THE COURT REPORTER.

7    A.   SURE.  IT'S M-A-S-S-E-Y.

8    Q.   OFFICER MASSEY OBSERVED A SUBSTANCE FALL FROM

9    THE DEFENDANT'S PERSON?

10   A.   YES, MA'AM.

11   Q.   DID HE INFORM YOU OF THAT?

12   A.   HE DID.

13   Q.   DID YOU RECOVER THAT ITEM?

14   A.   YES, I DID.

15   Q.   BASED OFF YOUR TRAINING AND EXPERIENCE, DID

16   YOU FORM AN OPINION AS TO THE NATURE OF THE SUBSTANCE?

17   A.   YES.

18   Q.   AND WHAT IS THAT OPINION?

19   A.   I BELIEVE THAT IT WAS COCAINE BASE.

20   Q.   DID IT APPEAR TO BE CONSISTENT WITH THE

21   SUBSTANCE YOU LOCATED EARLIER IN THE BACK OF YOUR PATROL

22   VEHICLE?

23   A.   YES.  THEY WERE THE SAME TYPE OF CONSISTENCY.

24   **MS. KARR:**  YOUR HONOR, AT THIS TIME, I WOULD

25   LIKE TO READ A STIPULATION INTO THE RECORD.

26   **THE COURT:**  SURE.

27   **MS. KARR:**  IT IS STIPULATED, FOR THE PURPOSES

28   OF THE PRELIMINARY EXAMINATION AND ANY MOTIONS ARISING

1   THEREFROM, THAT THE SUBSTANCE RECOVERED BY OFFICER

2   MINTER IN THE BACKSEAT OF HIS PATROL VEHICLE ON APRIL

3   12TH, 2008, DURING THE COURSE OF THIS INVESTIGATION, IS

4   1.43 GRAMS OF COCAINE BASE, A USABLE AMOUNT.

5            IT IS FURTHER STIPULATED, FOR THE PURPOSES OF

6   THE PRELIMINARY EXAMINATION AND ANY MOTIONS ARISING

7   THEREFROM, THAT THE SUBSTANCE RECOVERED BY OFFICER

8   MINTER DURING THE STRIP SEARCH OF THE DEFENDANT ON

9   APRIL 12, 2008, WAS .02 GRAMS OF COCAINE, ALSO A USABLE

10  AMOUNT.

11           **THE COURT:**  I THINK IT WAS RECOVERED FROM THE

12  OTHER -- MASSEY RECOVERED THE .02, RIGHT?

13           **THE WITNESS:** YES.

14           **MR. THOMPSON:**  YOUR HONOR, THERE IS MAYBE SOME

15  CONFUSION ABOUT WHAT I'M WILLING TO STIPULATE TO.  I AM

16  WILLING TO STIPULATE THAT WHAT THEY TESTED WAS ROCK

17  COCAINE, FOR PURPOSES OF PRELIM.  BUT I'M NOT

18  STIPULATING TO THE FACTS OF WHERE IT WAS FOUND AND THAT

19  KIND OF THING.

20           **THE COURT:**  BASICALLY, YOU STIPULATE TO THE

21  LAB REPORT, RIGHT?

22           **MR. THOMPSON:**  I WILL STIPULATE TO LAB REPORT,

23  BUT I'M NOT STIPULATING --

24           **THE COURT:**  SO YOU STIPULATE TO THE LAB, AND

25  THEN YOU JUST ASK HIM THE QUESTIONS, IF HE IMPOUNDED

26  WHAT HE SAYS WAS FOUND AT THE LOCATION UNDER THAT TAG

27  NUMBER.  THAT'S CLEANER FOR YOU, RIGHT, MR. THOMPSON?

28           **MR. THOMPSON:**  YES, YOUR HONOR.

1          **THE COURT:**  GOOD ENOUGH.  GO AHEAD.

2    **BY MS. KARR:**

3          Q.    AFTER YOU LOCATED THE ROCK COCAINE IN THE BACK

4    OF YOUR PATROL VEHICLE, DID YOU SUBSEQUENTLY IMPOUND

5    THAT ROCK COCAINE?

6          A.    YES, MA'AM.

7          Q.    AND DID YOU IMPOUND IT UNDER ITEM ONE OF

8    IMPOUND NUMBER 067747?

9          A.    I BELIEVE THAT WAS THE TAG NUMBER, YES.

10         Q.    AND THE ROCK COCAINE THAT OFFICER MASSEY

11   OBSERVED, WHICH YOU RECOVERED FROM THE STRIP SEARCH OF

12   THE DEFENDANT, DID YOU ALSO IMPOUND THAT SUBSTANCE?

13         A.    YES, MA'AM.  ITEM TWO OF THE SAME TAG.

14         Q.    ITEM TWO OF THE SAME IMPOUND NUMBER?

15         A.    YES, MA'AM.

16             **MS. KARR:**  YOUR HONOR, JUST TO CLARIFY --

17             **THE COURT:**  THE STIPULATION IS THAT, FOR THAT

18   TAG NUMBER, IF A CHEMIST WERE GOING TO COME IN AND

19   TESTIFY, THE CHEMIST WOULD TESTIFY TO THE AMOUNT STATED

20   AS A USABLE QUANTITY ON THE ONE, AND THAT'S FOR PURPOSES

21   OF PRELIMINARY EXAMINATION AND ANY MOTIONS ON THE

22   RECORD.  IS THAT RIGHT, MR. THOMPSON?

23             **MR. THOMPSON:** YES, YOUR HONOR.

24             **THE COURT:**  SO STIPULATED THEN?

25             **MR. THOMPSON:**  SO STIPULATED.

26             **THE COURT:**  NOW, THE EXPERT WOULD SAY, "USABLE

27   QUANTITY ON AMOUNT ONE."  DO THEY SAY, "USABLE QUANTITY"

28   ON AMOUNT TWO?

1      **MS. KARR:**  YES, YOUR HONOR.

2      **THE COURT:**  OKAY, IF THAT'S WHAT THEY WOULD

3   TESTIFY TO.  NEXT QUESTION.

4      **MS. KARR:**  YOUR HONOR, AT THIS TIME, I WOULD

5   ASK THAT THE COURT TAKE JUDICIAL NOTICE OF ITS OWN FILE;

6   THAT ON APRIL 16TH, 2008, AT APPROXIMATELY 1:30 P.M., IN

7   DEPARTMENT 12, THE DEFENDANT WAS ARRAIGNED ON THIS

8   COMPLAINT, AND HE STATED THAT HIS TRUE NAME DID APPEAR

9   ON THE COMPLAINT.

10     **THE COURT:**  THROUGH COUNSEL.  I DON'T HAVE A

11  PROBLEM TAKING JUDICIAL NOTICE OF THE COURT RECORD.  DO

12  YOU, MR. THOMPSON?

13     **MR. THOMPSON:**  NO, YOUR HONOR.

14     **THE COURT:**  GOOD ENOUGH, THEN.  I WILL DO

15  THAT.

16     **MS. KARR:**  THANK YOU.  AT THIS TIME, NO

17  FURTHER QUESTIONS.

18     **THE COURT:**  MR. THOMPSON, CROSS.

19     **MR. THOMPSON:**  THANK YOU, YOUR HONOR.

20     **THE COURT:**  SURE.

21                   **CROSS-EXAMINATION**

22  BY MR. THOMPSON:

23     Q.   GOOD MORNING, OFFICER MINTER.

24     A.   GOOD MORNING.

25     **MR. THOMPSON:**  THERE'S NO PODIUM IN HERE, HUH?

26     **THE COURT:**  YOU CAN STAY SEATED.  THAT'S FINE.

27     **MR. THOMPSON:**  ALL RIGHT.  THANK YOU.

28

BY MR. THOMPSON:

    Q.   WHAT TIME DID YOUR SHIFT START THAT DAY?

    A.   6:00 IN THE MORNING.

    Q.   AND HAD YOU EVER MET MR. CROWLEY BEFORE THAT DAY?

    A.   NO.

    Q.   OKAY.  HAD YOU -- HAD YOU KNOWN THAT HE HAD USED THE NAME RAYMOND THOMPSON IN THE PAST?

    **MS. KARR:**  OBJECTION.  RELEVANCE.

    **THE COURT:**  THAT'S OKAY.  DO YOU KNOW?

    **THE WITNESS:** NO, I DO NOT.

BY MR. THOMPSON:

    Q.   HOW ABOUT -- DID HE USE THE NAME ROBERT THOMPSON?

    A.   NO.

    Q.   DID YOU KNOW, AT THAT TIME, THAT HE HAD BEEN CONVICTED OF PETTY THEFT?

    A.   BEFORE I CONTACTED HIM, SIR?

    Q.   YES.  BEFORE YOU CONTACTED HIM.

    A.   NO.

    Q.   HOW ABOUT AT THE TIME YOU GOT TO THE STATION, DID YOU KNOW THEN THAT HE HAD BEEN CONVICTED OF PETTY THEFT?

    A.   I KNEW THAT HE WAS ON PAROLE FOR, I BELIEVE, BURGLARY.

    Q.   OKAY.  DID YOU KNOW THAT HE HAD TWO CONVICTIONS FOR BURGLARY?

    **MS. KARR:**  OBJECTION, YOUR HONOR.  RELEVANCE.

1     **THE COURT:**  NO.  THAT'S OVERRULED.  I THINK

2  YOU ARE ASKING FOR HEARSAY STATEMENTS TO COME IN.  I

3  THINK HE IS ENTITLED TO IMPEACH.  IT'S IF HE KNOWS.

4  WERE YOU AWARE OF IT?

5     **THE WITNESS:** NO, SIR.

6     **THE COURT:**  OKAY.

7  **BY MR. THOMPSON:**

8     Q.   DO YOU KNOW THAT HE WAS ARRESTED LATER THAT

9  DAY FOR BEING UNDER THE INFLUENCE OF CONTROLLED

10  SUBSTANCE?

11     A.   I LEARNED LATER, YES, SIR.

12     Q.   AND, IN FACT, JUST THREE DAYS AGO, YOU

13  ARRESTED HIM FOR PETTY THEFT, RIGHT?

14     A.   I DID.

15     Q.   AND THIS IS THE MAN WHOSE WORD YOU WERE TAKING

16  FOR MR. ELMORE PUTTING CRACK ON THE SEAT, RIGHT?

17     A.   YES, SIR.

18     Q.   ALL RIGHT.  WHAT TIME WAS IT THAT MR. JOHNSON

19  FLAGGED YOU DOWN?

20     A.   I DON'T REMEMBER THE EXACT TIME.  I CAN LOOK

21  AT MY REPORT, IF THAT WILL HELP, SIR.

22     Q.   YEAH.  IF IT WILL REFRESH YOUR RECOLLECTION,

23  LET ME KNOW.

24     A.   OKAY.

25     Q.   DOES THAT REFRESH YOUR RECOLLECTION?

26     A.   YES, SIR. IT WAS --

27     Q.   SORRY.

28     A.   9:00 IN THE MORNING, SIR.

1      Q.   SO THERE WERE THREE HOURS BETWEEN THE TIME YOU

2   STARTED YOUR SHIFT AND THE TIME THAT MR. JOHNSON FLAGGED

3   YOU DOWN?

4      A.   YES.

5      Q.   THIS WAS ON WHAT STREET AGAIN?

6      A.   14TH.

7      Q.   14TH.  SO THAT'S A NORTH/SOUTH ROAD, RIGHT?

8      A.   IT IS.

9      Q.   AND WHAT SIDE OF THE STREET WAS MR. JOHNSON

10  ON?

11     A.   WELL, ORIGINALLY, MR. JOHNSON WAS ON K, 1400 K

12  STREET, WHICH WOULD RUN EAST/WEST; ALMOST THE

13  INTERSECTION OF 14TH AND K.

14     Q.   FROM 14TH AND K, CAN YOU SEE FROM THAT POINT

15  TO WHERE THE THREE SUSPECTS WERE?

16     A.   YES, SIR.

17     Q.   OKAY.  AND SO ON WHAT SIDE OF K WAS MR.

18  JOHNSON?

19     A.   THE NORTH SIDE.

20     Q.   WOULD HE HAVE BEEN ON THE NORTHWEST SIDE,

21  THEN, OF THAT INTERSECTION?

22     A.   HE WOULD HAVE BEEN ON THE NORTHEAST SIDE.

23     Q.   THE NORTHEAST SIDE.

24     A.   BUT HE WAS ABOUT 20 YARDS AND EASTBOUND ON K.

25     Q.   OKAY.  AND WHAT SIDE OF 14TH WERE THESE THREE

26  SUSPECTS ON?

27     A.   THE WEST SIDE.

28     Q.   AND THEY WERE WALKING SOUTH?

1      A.    YES, SIR.

2      Q.    IS THAT SOUTH FROM K?

3      A.    YES, IT IS.

4      Q.    THERE ARE A BUNCH OF HOMELESS SHELTERS AND

5      THINGS LIKE THAT AROUND THERE?

6      A.    THERE ARE.  YES, SIR.

7      Q.    DID MR. JOHNSON TELL YOU WHEN HE HAD SEEN THEM

8      SMOKING?

9      A.    NO, HE DID NOT.

10     Q.    YOU DIDN'T ASK?

11     A.    I DID NOT.

12     Q.    SO IT COULD HAVE BEEN YESTERDAY?

13     A.    I DON'T KNOW.

14     Q.    WHERE WERE THEY WHEN HE SAW THEM SMOKING --

15     OR, ACTUALLY, HE SAW ONE PERSON SMOKING SOMETHING,

16     RIGHT?

17     A.    YES.

18     Q.    WHERE WAS THIS PERSON, WHO WAS SMOKING, WHEN

19     MR. JOHNSON SAW HIM?

20     A.    MR. JOHNSON TOLD ME IT WAS RIGHT AT THE SAME

21     AREA, AT 1400 K.

22     Q.    AND WHERE WAS MR. JOHNSON WHEN HE SAW THE

23     PERSON SMOKING?

24     A.    I DIDN'T ASK EXACTLY WHERE HE WAS.

25     Q.    HAVE YOU EVER MET MR. JOHNSON BEFORE THAT DAY?

26     A.    NO.

27     Q.    WHEN YOU GOT THESE THREE FOLKS' ATTENTION, YOU

28     WERE IN YOUR POLICE CAR, RIGHT?

1    A.    I DROVE UP IN MY CAR.  YES, SIR.

2    Q.    IT IS A MARKED POLICE CAR?

3    A.    IT IS.

4    Q.    AND YOU WERE DRESSED AS YOU ARE TODAY, IN FULL
5    UNIFORM?

6    A.    YES, SIR.

7    Q.    WAS THERE ANYONE ELSE WITH YOU IN YOUR CAR?

8    A.    NO, SIR.

9    Q.    WHEN YOU DROVE UP TO THEM, THEY WOULD HAVE
10   BEEN ON YOUR RIGHT-HAND SIDE?

11   A.    YES.

12   Q.    YOU ROLLED DOWN YOUR PASSENGER SIDE WINDOW?

13   A.    NO.  I GOT OUT OF THE CAR TO CONTACT THEM.

14   Q.    SO YOU STOPPED NEAR THEM?

15   A.    YES, I DID.

16   Q.    DESCRIBE THAT TO ME, IF YOU WOULD.

17   A.    SURE.  I PULLED UP.  THEY WERE WALKING
18   SOUTHBOUND ON THE SIDEWALK.  I PULLED IN AT A SLIGHT
19   ANGLE ON THE STREET, GOT OUT, AND WALKED TOWARDS THE
20   FRONT OF MY CAR, AND THEN I CONTACTED THEM THERE.

21   Q.    SO WHEN YOU PULLED TO THE RIGHT SIDE, THIS
22   WOULD BE ON THE WEST SIDE OF 14TH, RIGHT?

23   A.    YES, SIR.

24   Q.    WHEN YOU PULLED IN AT AN ANGLE ON THE RIGHT
25   SIDE OF 14TH, DID YOU HAVE THE LIGHTS ON YOUR CAR GOING?

26   A.    NO.

27   Q.    ANY EMERGENCY FLASHERS GOING?

28   A.    NO.

1        Q.   BLINKERS GOING?

2        A.   NO.

3        Q.   WAS THERE ANY TRAFFIC AROUND THERE AT THAT

4   TIME?

5        A.   I DON'T REMEMBER THAT, NO.

6        Q.   WHEN YOU PULLED IN AT AN ANGLE LIKE THAT, WERE

7   YOU JUST TO THE SOUTH OF THEM OR EQUAL TO THEM?

8        A.   JUST A LITTLE BIT TO THE NORTH.

9        Q.   JUST A LITTLE BIT TO THE NORTH?

10       A.   YES, SIR.

11       Q.   YOU WOULD HAVE BEEN BEHIND THEM?

12       A.   YES.

13       Q.   WHEN YOU PULLED YOUR CAR IN IN THAT MANNER,

14   DID ANY OF THE THREE TURN AROUND AND LOOK AT YOU?

15       A.   I BELIEVE ALL THREE OF THEM DID.

16       Q.   SO WHEN YOU PULLED IN, DID YOUR CAR MAKE SOME

17   NOISE THAT A CAR HAD JUST COME TO A STOP THERE?

18       A.   I DON'T REMEMBER.

19       Q.   WOULD IT HAVE BEEN A PRETTY ABRUPT STOP?

20       A.   I DIDN'T SLAM ON THE BRAKES OR ANYTHING LIKE

21   THAT.  I PULLED UP AND PUT IT IN PARK AND GOT OUT.

22       Q.   DID YOU GET OUT -- WHEN YOU GOT OUT OF YOUR

23   CAR, DID YOU TURN OFF THE IGNITION?

24       A.   I DON'T REMEMBER.

25       Q.   SO YOU GET OUT OF YOUR CAR, AND YOU WALK RIGHT

26   OUT TO THE SIDEWALK, RIGHT?

27       A.   YES.

28       Q.   AS YOU WERE WALKING OVER THERE, WERE YOU

1    SAYING SOMETHING LIKE, "HEY, CAN I TALK TO YOU?"

2         A.    EXACTLY.

3         Q.    YOU REMEMBER THE WORDS YOU USED?

4         A.    IT WAS SOMETHING LIKE -- I DON'T REMEMBER

5    EXACTLY THE WORDS, BUT IT WAS SOMETHING LIKE, "HEY, CAN

6    I TALK TO YOU?"

7         Q.    WHAT WAS YOUR TONE OF VOICE AT THAT POINT?

8         A.    A LITTLE BIT LOUDER THAN WE ARE TALKING NOW.

9         Q.    OKAY. AND NONE OF THEM TRIED TO RUN AWAY,

10   RIGHT?

11        A.    NO, SIR.

12        Q.    AND NOBODY WAS SHIFTING THEIR HANDS AROUND IN

13   THEIR POCKETS OR ANYTHING LIKE THAT, RIGHT?

14        A.    NO.

15        Q.    MR. ELMORE IS NOT REACHING IN THE BACK OF HIS

16   PANTS OR ANYTHING, RIGHT?

17        A.    NO.  MR. ELMORE SAT ON THE SIDEWALK.

18        Q.    HE SAT ON THE SIDEWALK?

19        A.    YES, SIR.

20        Q.    IS THAT WHAT YOU TOLD HIM TO DO?

21        A.    I THINK I DID.

22        Q.    AND THIS IS BEFORE YOU GOT A LOOK AT HIS EYES,

23   RIGHT?

24        A.    YES, SIR.

25        Q.    DID YOU TELL EACH OF THEM TO SIT?

26        A.    I DID.

27        Q.    WERE THEY SITTING UP?  DID YOU HAVE THEM

28   SITTING UP AGAINST THE BUILDING?

24

1      A.   I HAD -- MR. ELMORE SAT ON THE SIDEWALK; MR.

2 CROWLEY SAT ON THE CURB.  AND THERE WAS A FEMALE WITH

3 THEM, I BELIEVE HER LAST NAME WAS MOORE, AND SHE LEANED

4 UP AGAINST THE PUSH BUMPER OF MY PATROL VEHICLE.

5         I WAS BY MYSELF AT THE TIME.  FOR MY SAFETY, I

6 FELT MORE COMFORTABLE IF THEY WERE ALL STATIONARY, I

7 GUESS.

8      Q.   DID YOU HAVE ANY OF THEM CUFFED AT THAT POINT?

9      A.   NO.

10     Q.   WHEN YOU ASKED IF ANY OF THEM WERE ON

11 PROBATION OR PAROLE, MR. ELMORE DIDN'T ANSWER; IS THAT

12 RIGHT?

13     A.   NO.  HE TOLD ME HE WAS NOT.

14     Q.   HE TOLD YOU HE WAS NOT?

15     A.   YES, SIR.

16     Q.   AND THE FEMALE, SONYA MOORE, TOLD YOU SHE WAS

17 ON PROBATION?

18     A.   YES, SIR.

19     Q.   FOR DRUGS?

20     A.   YES.

21     Q.   AND THE OTHER GENTLEMAN, MR. CROWLEY, TOLD YOU

22 HE WAS ON PAROLE?

23     A.   YES, SIR.

24     Q.   DID YOU CUFF EITHER OF THEM AT THAT POINT?

25     A.   I ENDED UP CUFFING MR. CROWLEY, BUT I BELIEVE

26 I WAITED FOR A COVER UNIT TO COME, SO IT MAY HAVE BEEN A

27 MINUTE OR TWO.

28     Q.   WHILE MR. ELMORE WAS -- JUST SO I CAN HAVE A

1    VISUAL HERE --

2         A.    SURE.

3         Q.    ARE YOU A GOOD ARTIST AT ALL?

4         A.    NO.  BUT I WILL DO MY BEST.

5         Q.    WHY DON'T YOU JUST SHOW US THE AREA AND PUT A

6    1, 2, 3 FOR WHERE THEY WERE SEATED OR STANDING, WHERE

7    YOUR CAR WAS, THE ANGLING, AND THAT KIND OF THING.

8         A.    YOU DON'T NEED TO SEE K STREET ANYMORE, DO

9    YOU?

10        Q.    NO.

11        A.    SO IF THIS IS 14TH STREET, THIS IS MY VEHICLE

12   HERE (INDICATING).  AND WHICH NUMBER WOULD YOU LIKE FOR

13   WHO?

14        Q.    WHO IS THE FIRST ONE THAT SAID ANYTHING TO

15   YOU, ASIDE FROM MR. JOHNSON?

16        A.    I BELIEVE MR. CROWLEY.

17        Q.    LET'S USE MR. CROWLEY AS NUMBER 1.

18        A.    NUMBER 1 IS HERE, ON THE CURB (INDICATING).

19        Q.    SECOND ONE WHO SAID ANYTHING TO YOU?

20        A.    I BELIEVE MS. MOORE.

21        Q.    SO MS. MOORE IS NUMBER 2.

22        A.    ON THE PUSH BUMPER HERE.  AND MR. ELMORE IS

23   HERE, NUMBER 3, ON THE CURB, SITTING (INDICATING).

24        Q.    ALL RIGHT.  NOW, AND --

25        A.    AND THIS WOULD BE NORTHBOUND.

26        Q.    THANK YOU.  AND, OF COURSE, WHERE YOU ARE

27   SHOWING NUMBER 2 FOR MS. MOORE, THAT IS YOUR FRONT

28   BUMPER, CORRECT?

1     A.    YES.

2     Q.    ALL RIGHT.  PUT A LITTLE -- THANK YOU.  YOU

3   CAN RESUME YOUR SEAT.  NOW, WHEN YOU GOT OUT OF YOUR

4   CAR, THEY WERE STILL WALKING, CORRECT?

5     A.    YES, THEY WERE.

6     Q.    AND SO THEY WOULDN'T HAVE BEEN IN THE POSITION

7   THAT YOU HAVE SHOWN ON THE DIAGRAM, RIGHT?

8     A.    NO.  THEY WERE A LITTLE MORE NORTHBOUND WHEN I

9   ORIGINALLY PULLED UP.

10    Q.    ALL RIGHT.  AND YOU DETAINED THE ENTIRE GROUP

11  AT THAT POINT, RIGHT?

12    A.    I DID.

13    Q.    DID YOU CALL FOR BACKUP AT SOME POINT?

14    A.    I DID.

15    Q.    WAS THAT BEFORE YOU DETAINED THEM?

16    A.    AFTER.

17    Q.    HOW MUCH AFTER?

18    A.    ABOUT A MINUTE.  WHEN I REALIZED THAT MR.

19  CROWLEY WAS ON PAROLE AND MS. MOORE WAS ON PROBATION, I

20  KNEW I WAS GOING TO BE ABLE TO DO A SEARCH.  THAT'S WHEN

21  I ASKED FOR AN ADDITIONAL UNIT TO COME ASSIST ME.

22    Q.    ALL RIGHT.  SO IF YOU CAN TELL US -- READING

23  YOUR REPORT, IT'S NOT REAL EASY FOR ME TO FIGURE OUT THE

24  ORDER OF THINGS.

25    A.    OKAY.

26    Q.    WHOSE INFORMATION, IDENTIFICATION, AND THAT

27  KIND OF THING, DID YOU GET FIRST?

28    A.    FROM WHAT I CAN REMEMBER, MR. CROWLEY, BECAUSE

1     HE TOLD ME HE WAS ON PAROLE; AND THEN MS. MOORE'S AND

2     THEN MR. ELMORE'S IDENTITY.

3         Q.    SO THE INTERCHANGE BETWEEN YOU AND MR.

4     CROWLEY --

5         A.    YES, SIR.

6         Q.    -- HOW LONG WOULD YOU SAY THAT TOOK?  WE'RE

7     GOING A PIECE AT A TIME HERE.

8         A.    OKAY.

9         Q.    SO GETTING HIS IDENTIFICATION, INFORMATION,

10    THAT KIND OF THING, HOW LONG DID THAT TAKE?

11         A.    HE WAS STILL SEATED ON THE CURB WHEN I WAS

12    GETTING HIS INFORMATION, PROBABLY 30 SECONDS.  AND THEN

13    GETTING MS. MOORE'S INFORMATION, AND THE WILLIE TONY

14    NAME THAT MR. ELMORE GAVE ME WAS MAYBE ANOTHER TWO

15    MINUTES.  THE OTHER OFFICER CAME AND ASSISTED AND

16    WATCHED THEM.

17         Q.    WHO WAS THAT OFFICER, BY THE WAY?

18         A.    OFFICER MATTLEY.  I THINK IT'S M-A-T-T-L-E-Y.

19         Q.    WAS HE THE ONLY -- A MALE OFFICER? → her

20         A.    YES, MALE.  YES, SIR.

21         Q.    WAS HE THE ONLY OTHER OFFICER THAT CAME TO

22    THAT SCENE ON 14TH?     HER

23         A.    YES.

24         Q.    ALL RIGHT.  SO YOU GET MR. CROWLEY'S

25    IDENTIFICATION.  DID HE HAVE AN I.D. CARD OR SOMETHING

26    WITH HIM ?

27         **MS. KARR:**  YOUR HONOR, I WILL OBJECT AS TO

28    RELEVANCE.  THERE IS NO PENDING 1538 MOTION HERE.

1        **MR. THOMPSON:**  THESE DON'T GO TO 1538 MOTIONS.

2    THESE GO TO THE OPPORTUNITY --

3        **THE COURT:**  SUSTAINED.  NEXT QUESTION.

4    **BY MR. THOMPSON:**

5        Q.  DID YOU HAVE YOUR EYES ON ALL THREE OF THEM

6    THE ENTIRE TIME THAT YOU WERE AT THE SCENE ON 14TH

7    STREET?

8        A.  NO.

9        Q.  WERE YOU IN YOUR POLICE CAR AT SOME POINT?

10       A.  IN AND OUT, YES, SIR.

11       Q.  WERE MR. CROWLEY AND MR. ELMORE CLOSE ENOUGH

12   TO BE ABLE TO HAND SOMETHING, ONE TO THE OTHER?

13       A.  AT WHAT POINT?

14       Q.  WHILE THEY WERE IN THE POSITION YOU HAVE ON

15   THE DIAGRAM HERE.

16       A.  NO.  I DON'T THINK SO.

17       Q.  OKAY.  AND AT SOME POINT -- YOU CUFFED MR.

18   CROWLEY FIRST; IS THAT RIGHT?

19       A.  YES, SIR.

20       Q.  AND YOU PUT HIM IN THE DRIVER'S SIDE, REAR

21   SEAT, RIGHT?

22       A.  I CUFFED HIM.  I DID A QUICK SEARCH, LOCATED A

23   PIPE, AND PUT HIM IN MY VEHICLE.

24       Q.  OKAY.  AND THEN YOU CUFFED -- OR YOU LET MS.

25   MOORE GO AT SOME POINT, RIGHT?

26       A.  EVENTUALLY, YES, SIR.

27       Q.  YOU SEARCHED HER, AND THEN LET HER GO?

28       A.  I WAS ABLE TO CONFIRM HER IDENTITY ON THE

1    COMPUTER.  SHE HAD NO WARRANTS.  I DID THE BEST SEARCH I

2    COULD AND LET HER GO.  YES, SIR.

3         Q.   AND THEN YOU HANDCUFFED MR. CROWLEY, RIGHT?

4         A.   NO.  I HAD ORIGINALLY --

5         Q.   I'M SORRY.  MR. ELMORE?

6         A.   EVENTUALLY, YES, SIR, I DID.

7         Q.   WAS THAT AFTER YOU LET MS. MOORE GO OR BEFORE?

8         A.   I CAN'T REMEMBER.  I'M SORRY.

9         Q.   WHILE YOU CUFFED HIM, YOU DID A PAT-DOWN

10   SEARCH?

11        A.   YES.

12        Q.   DID YOU SEARCH HIM FOR NARCOTICS AT THAT

13   POINT?

14        A.   I DID.

15        Q.   THAT WAS BECAUSE MR. CROWLEY HAD TOLD YOU THAT

16   HE HAD SOME?

17        A.   YES.

18        Q.   SO ALREADY, AT THE SCENE, MR. CROWLEY HAD TOLD

19   YOU, "THAT GUY HAS GOT ROCK IN HIS BUTT CHEEKS"?

20        A.   YES.  I DID THE BEST SEARCH OF HIS BUTT CHEEKS

21   I COULD AT THE SCENE.

22        Q.   DID YOU FIND A PIPE ON HIM?

23        A.   NO, I DID NOT -- ON MR. ELMORE?

24        Q.   MR. ELMORE.

25        A.   NO, SIR.

26        Q.   OKAY.  DID -- MR. JOHNSON HAD TOLD YOU THAT HE

27   SAW THE GUY, WHO APPEARED TO BE MR. ELMORE, SMOKING A

28   PIPE, RIGHT?

1    A.   YES, HE DID.

2    Q.   DID THE FACT THAT YOU DIDN'T FIND A PIPE ON

3    HIM HAVE ANY SIGNIFICANCE TO YOU?

4    A.   NOT AT THAT POINT, NO.

5    Q.   YOU PUT MR. ELMORE IN THE PASSENGER SEAT OF

6    THE BACK OF YOUR PATROL CAR, RIGHT?

7    A.   YES.

8    Q.   CUFFED BEHIND HIS BACK?

9    A.   HE WAS.

10   Q.   MR. CROWLEY IS ALSO CUFFED BEHIND HIS BACK?

11   A.   YES, SIR.

12   Q.   WHEN YOU PUT THE TWO OF THEM IN THE CAR, WHAT

13   DID YOU DO IMMEDIATELY NEXT?

14   A.   DROVE TO HEADQUARTERS.

15   Q.   YOU GOT RIGHT IN THE DRIVER'S SEAT AND DROVE

16   TO HEADQUARTERS?

17   A.   I MIGHT HAVE TALKED TO OFFICER MATTLEY FOR A

18   FEW SECONDS, BUT --

19   Q.   WHILE YOU WERE TALKING WITH OFFICER MATTLEY,

20   WOULD YOU HAVE BEEN WATCHING THE TWO OF THEM IN YOUR

21   BACKSEAT?

22   A.   NO.

23   Q.   DO YOU HAVE AUDIO RECORDING DEVICES IN YOUR

24   CAR?

25   A.   I DO NOT.

26   Q.   YOU TOLD US THAT YOU SUSPECTED THAT HE, MR.

27   ELMORE, MIGHT HAVE BEEN UNDER THE INFLUENCE OF A

28   NARCOTIC; IS THAT RIGHT?

```
 1      A.   I DID.

 2      Q.   THAT'S PART OF THE REASON YOU ARRESTED HIM?

 3      A.   THAT'S PART.  YES, SIR.

 4      Q.   DID YOU CHECK HIS PULSE?

 5      A.   I DID NOT.

 6      Q.   DID YOU EXAMINE HIS TONGUE?

 7      A.   NO.

 8      Q.   DID YOU NOTICE BAD BREATH?

 9      A.   I DID NOT.

10      Q.   DID YOU NOTICE ANY BODY ODOR?

11      A.   I DON'T RECALL THAT, NO.

12      Q.   DID YOU NOTICE BRITTLE FINGERNAILS?

13      A.   I DON'T RECALL.

14      Q.   DID YOU DO A ROMBERG TEST ON HIM?

15      A.   NO, SIR.

16      Q.   DO YOU KNOW WHAT A ROMBERG TEST IS?

17      A.   YES, SIR.

18      Q.   WHAT IS THAT?

19      A.   THAT'S WHERE THEY STAND STILL AND HOLD THEIR

20   LEG, IF I RECALL CORRECTLY.  IT'S TO SEE IF THEY HAVE A

21   STEADY GATE.

22      Q.   AND THEN THERE IS ALSO A 30-SECOND ELEMENT TO

23   THAT TEST, ISN'T THERE?

24      A.   THERE IS.

25      Q.   THAT'S TO CHECK HOW THEIR BODY CLOCK IS

26   WORKING, RIGHT?

27      A.   YES.

28           MS. KARR:  OBJECTION, YOUR HONOR.  RELEVANCE.
```

1    **THE COURT:**  NO.  THAT'S OVERRULED.  NEXT.

2    BY MR. THOMPSON:

3    Q.  YOU DIDN'T DO THE 30-SECOND TEST, RIGHT?

4    A.  I DID NOT.

5    Q.  SO YOUR ONLY EVALUATION OF HIM BEING UNDER THE

6    INFLUENCE WOULD HAVE BEEN HIS DILATED PUPILS; IS THAT

7    RIGHT?

8    A.  THE DILATED PUPILS, THE SWEATING, AND THE

9    SLURRED SPEECH, SIR.

10    Q.  THE QUESTIONS YOU ASKED HIM ABOUT HIS NAME,

11    WITH RESPECT TO THE 148.9, HOW MANY TIMES AT THE SCENE

12    DID YOU ASK HIM HIS NAME?

13    A.  AT LEAST THREE, FROM WHAT I CAN REMEMBER.

14    Q.  YOU JUST DIDN'T BELIEVE HIS NAME WAS WILLIE

15    TONY?

16    A.  EXACTLY.

17    Q.  AND, EACH TIME, HE REPEATED THE NAME, WILLIE

18    TONY?

19    A.  YES, SIR.

20    Q.  AND YOU COULD UNDERSTAND THAT, RIGHT?

21    A.  YES.

22    Q.  HIS DATE OF BIRTH THAT HE GAVE, 10/2/54?

23    A.  I BELIEVE IT WAS THAT, YES, SIR.

24    Q.  AND HE GAVE THAT SAME DATE OF BIRTH EACH TIME?

25    A.  HE DID.

26    Q.  WHILE YOU WERE DOING THAT EVALUATION OF HIM

27    FOR BEING UNDER THE INFLUENCE, WHERE WAS MR. CROWLEY?

28    A.  HE WAS IN THE BACK OF MY POLICE CAR.

1    Q.    HOW LONG DID YOUR EVALUATION TAKE?

2    A.    IT WAS A VERY QUICK EVALUATION.   SECONDS.

3    Q.    SECONDS?

4    A.    JUST ME LOOKING AT HIM.   YES, SIR.

5    Q.    OKAY.  AND YOU HAD ALREADY SEARCHED HIM AND

6    NOT DISCOVERED THE PIPE BY THAT POINT; IS THAT RIGHT?

7    A.    NO.   I HAD DONE THE VERY QUICK EVALUATION OF

8    HIM AFTER MR. CROWLEY TOLD ME THAT THERE WAS COCAINE IN

9    HIS BUTT CHEEKS.

10    Q.    AND YOU ARE CERTAIN THAT THE EVALUATION

11    OCCURRED AFTER MR. CROWLEY TOLD YOU THAT --

12    A.    YES.  I'M SURE.

13    Q.    DID MS. MOORE MAKE ANY STATEMENTS TO YOU ABOUT

14    MR. ELMORE HAVING ANY DRUGS ON HIS PERSON?

15    A.    NO, SIR.

16    Q..    DID YOU ASK HER ANY QUESTIONS WITH RESPECT TO

17    THAT, HIM HAVING DRUGS ON HIS PERSON?

18    A.    NO, I DID NOT.

19    Q.    COULD YOU ESTIMATE FOR US THE AMOUNT OF TIME

20    THAT MR. CROWLEY WAS IN THE BACKSEAT OF YOUR POLICE CAR

21    BY HIMSELF.

22    A.    FIVE MINUTES.

23    Q.    AND DURING THAT FIVE MINUTES, YOU WEREN'T

24    WATCHING HIM, RIGHT?

25    A.    I WAS NOT.

26    Q.    AND THIS IS STILL BEFORE 10:00 A.M., RIGHT?

27    A.    IT IS.  YES, SIR.

28    Q.    THE SEARCH YOU DID OF MR. ELMORE ON 14TH,

1    SPECIFICALLY WITH RESPECT TO HIS HIND END, CAN YOU

2    DESCRIBE WHAT YOU DID.

3         A.    YES.  I HAD HIM SPREAD HIS LEGS.  AND, WITH A

4    HAND LIKE THIS (INDICATING), GO UP AND CHECK, I GUESS,

5    THE INSIDE OF HIS THIGH AND, AS BEST I COULD, HIS

6    BUTTOCKS CHEEKS.

7         Q.    WHAT WE WOULD CALL THE BUTT CRACK?

8         A.    YES, SIR.

9         Q.    IS THAT IT?

10        A.    YES.  THAT'S IT.

11        Q.    OKAY.  AND YOU HAVE BEEN TRAINED TO DO THAT,

12    TO LOOK FOR NARCOTICS THAT ARE SECRETED IN THAT AREA OF

13    THE BODY; IS THAT RIGHT?

14        A.    YES, SIR.  IT'S COMMON FOR SOME REASON.

15        Q.    IT'S APPARENTLY A GOOD HIDING PLACE, RIGHT?

16        A.    YES, SIR.

17        Q.    WHAT KIND OF PANTS WAS HE WEARING?

18        A.    SWEAT PANTS.

19        Q.    DID YOU, AT SOME POINT, FIND A WALLET ON HIM?

20        A.    I DID.

21        Q.    WHERE WAS THAT WALLET?

22        A.    THAT WAS ON HIS LEFT SIDE, BETWEEN HIS BODY

23    AND THE ELASTIC OF THE SWEAT PANTS.  I GUESS THE BAND

24    WAS KIND OF HOLDING IT AGAINST HIS BODY.

25        Q.    WERE THESE SWEAT PANTS TIGHT ON HIS WAIST, OR

26    MODERATELY TIGHT?

27        A.    THEY WERE LOOSE, BUT TIGHT ENOUGH TO HOLD HIS

28    WALLET IN, BUT SORT OF LOOSE-FITTING SWEAT PANTS.

1      Q.   DO YOU KNOW WHAT KIND OF UNDERWEAR HE HAD ON,

2   IF ANY?

3      A.   I DON'T REMEMBER.

4      Q.   THE WALLET -- YOU KNOW HOW SOME GUYS WILL HAVE

5   EVERYTHING UNDER THE SUN IN THEIR WALLET, AND THEY CAN

6   BASICALLY CRAM IT SHUT, THAT KIND OF A SITUATION?

7      A.   YES, SIR.

8      Q.   HOW WOULD YOU DESCRIBE THAT WALLET WITH REGARD

9   TO WHETHER IT WAS STUFFED WITH STUFF OR NOT-SO-STUFFED?

10     A.   IT WAS STUFFED WITH THE MONEY.  IT WAS A

11  BROWN, LEATHER WALLET, TRI-FOLD TYPE OF WALLET.  AND IT

12  WAS ABLE TO ALMOST BE CLOSED, BUT STILL, LIKE YOU SAID,

13  KIND OF OVERFLOWING A LITTLE BIT WITH THE MONEY.

14     Q.   AND YOU TOOK THAT FROM HIS PERSON, RIGHT?

15     A.   I DID.

16     Q.   HE NEVER GOT HIS HANDS BACK ON THAT WALLET,

17  RIGHT?

18     A.   NO.

19     Q.   ALL RIGHT.

20     A.   WELL, MAYBE THE WALLET.  I DON'T RECALL IF I

21  -- ACTUALLY, I DID.  I PUT IT IN HIS PROPERTY BAG.  I

22  DON'T THINK HE HAS IT YET.

23     Q.   FROM THE TIME THAT HE WAS TAKEN TO --

24  EVENTUALLY TAKEN TO CENTRAL JAIL, RIGHT?

25     A.   HE WAS.

26     Q.   FROM THE TIME YOU DETAINED HIM AND TOOK HIS

27  WALLET TO THE TIME YOU TOOK HIM TO CENTRAL JAIL, HE

28  DIDN'T GET HIS HANDS ON HIS WALLET, RIGHT?

1        **MS. KARR:**  OBJECTION, YOUR HONOR.  RELEVANCE.

2        **MR. THOMPSON:**  I'M JUST TRYING TO SHOW THE

3   LACK OF OPPORTUNITY TO GET ANY CRACK OUT OF ANY WALLET,

4   YOUR HONOR.

5        **THE COURT:**  OKAY.  BUT YOU GOT IN WHEN HE

6   SEPARATED IT.  AND SO IT'S SUSTAINED.

7        **MR. THOMPSON:**  OKAY.

8   **BY MR. THOMPSON:**

9        Q.   THE DISTANCE BETWEEN THE SCENE THERE AT 14TH

10  AND THE POLICE DEPARTMENT IS HOW FAR?

11       A.   OUR POLICE STATION IS RIGHT AT THE CORNER OF

12  14TH AND BROADWAY.  IT'S MAYBE A QUARTER MILE.

13       Q.   AND, DURING THAT TRIP, YOU HAD BOTH MR.

14  CROWLEY AND MR. ELMORE IN THE CAR?

15       A.   YES, I DID.

16       Q.   WERE YOU OCCASIONALLY LOOKING IN THE REARVIEW

17  MIRROR AT THEM?

18       A.   YES.

19       Q.   ARE THEY TALKING TO EACH OTHER, ANYTHING LIKE

20  THAT?

21       A.   I DON'T REMEMBER HEARING ANYTHING.

22       Q.   OKAY.  AND THEY ARE IN HANDCUFFS, BOTH, BEHIND

23  THEIR BACKS, RIGHT?

24       A.   YES, SIR.

25       Q.   CAN YOU TELL US -- YOU KNOW, MOST OF US SEE --

26  AND SOME OF US MAY HAVE EXPERIENCED -- BEING HANDCUFFED

27  IN THE BACK OF POLICE CARS; IT'S NOT THE MOST

28  COMFORTABLE POSITION TO BE IN.

1    A.    IT'S NOT.

2    Q.    LET'S TALK ABOUT MR. CROWLEY'S BODY.  WAS HE

3   TILTED TO ONE SIDE OR ANOTHER?

4    A.    I DON'T REMEMBER.

5    Q.    HOW ABOUT MR. ELMORE?

6    A.    I DON'T REMEMBER.

7    Q.    IS IT USUALLY THE CASE THAT A PRISONER IN YOUR

8   PATROL CAR IS GOING TO BE TILTED TO ONE SIDE OR ANOTHER?

9        **MS. KARR:**  OBJECTION, YOUR HONOR.

10   SPECULATION.  RELEVANCE.

11       **THE COURT:**  IT WOULD BE HIS EXPERIENCE.  DO

12   YOU NOTICE THAT THEY TILT?

13       **THE WITNESS:** EVERYBODY IS DIFFERENT.  SOME

14   PEOPLE LAY ON THE BOTTOM, AND SOME PEOPLE STAY STILL THE

15   ENTIRE TIME.

16   **BY MR. THOMPSON:**

17   Q.    MR. ELMORE WASN'T LAYING DOWN, WAS HE?

18   A.    NO, SIR.

19   Q.    NEITHER WAS MR. CROWLEY?

20   A.    NO, SIR.

21   Q.    YOU DIDN'T SEE MR. ELMORE FIDGETING AROUND IN

22   HIS SEAT, RIGHT?

23   A.    NOT WHILE WE WERE DRIVING, NO.

24   Q.    OH, THE SEATBELTS.  WHY WEREN'T THEY IN

25   SEATBELTS?

26   A.    I DIDN'T SEE THE NEED.  BASED ON MY SAFETY AND

27   WHAT OTHER OFFICERS DO AND THE WAY I WAS TRAINED, NOBODY

28   GETS SEAT BELTED.  YOU WOULD HAVE TO LEAN OVER SOMEBODY

1    TO PUT THEIR SEATBELT ON.

2        Q.    AND THAT WOULD BE A DANGER TO YOU?

3        A.    YES, SIR.

4        Q.    WHAT ARE THE SEATBELTS IN THERE FOR?

5        A.    FOR THEIR SAFETY.  BUT, LIKE I SAID, BASED ON

6    THE WAY I WAS TRAINED AND THE SAFETY FOR ME, I DON'T

7    SEATBELT PEOPLE.

8        Q.    HAVE YOU EVER DRIVEN ANOTHER POLICE CAR IN

9    YOUR DEPARTMENT?

10            MS. KARR:    OBJECTION, YOUR HONOR.  RELEVANCE.

11            MR. THOMPSON:    YOUR HONOR, I KNOW I'M GOING

12    LONGER THAN PEOPLE MIGHT EXPECT.  BUT THIS IS AN ISSUE

13    OF HOW THE DOPE GOT HERE.  I THINK I HAVE LEEWAY HERE.

14            THE COURT:    WELL -- THE REASON WHY THE BELTS

15    ARE THERE --

16            MR. THOMPSON:    IT'S FOUNDATIONAL.

17            THE COURT:    -- THAT WAS OBJECT-ABLE.  HAVE YOU

18    DRIVEN OTHER CARS?

19            THE WITNESS:    I HAVE.

20            THE COURT:    NEXT.

21    BY MR. THOMPSON:

22        Q.    DO ANY OTHER POLICE CARS, IN THE REAR SEAT,

23    NOT HAVE SEATBELTS?

24        A.    YES.

25            MS. KARR:    OBJECTION, YOUR HONOR.  RELEVANCE.

26    MOVE TO STRIKE.

27            THE COURT:    WELL, IT IS NOT RELEVANT, BUT THE

28    ANSWER WILL STAND.  SOME OF THEM DON'T HAVE IT?

1           **THE WITNESS:** K-NINE UNITS.

2    **BY MR. THOMPSON:**

3           Q.    K-NINE UNITS?

4           A.    YES, SIR.

5           Q.    ARE THEY THE ONLY ONES?

6           A.    THAT I CAN THINK OF, YES.

7           Q.    WHEN YOU GOT TO HEADQUARTERS, YOU GO DOWN TO

8    THE SALLY PORT, RIGHT?

9           A.    YES.

10          Q.    THAT'S BELOW GROUND LEVEL?

11          A.    IT IS.

12          Q.    IT'S A SECURE AREA?

13          A.    IT IS.

14          Q.    YOU HAVE TO GET PERMITTED INTO THE GATED SALLY

15   PORT AREA, RIGHT?

16          A.    YES.

17          Q.    ARE THERE VIDEO CAMERAS DOWN THERE?

18          A.    THERE ARE.

19          Q.    AND THAT'S FOR EVERYBODY'S PROTECTION, RIGHT?

20          A.    YES, SIR.

21          Q.    AND THEN YOU PULLED UP TO AN AREA THAT IS NEAR

22   ROOM 138, CORRECT?

23          A.    YES.     *NEED video Footage of that area.*

24          Q.    WHEN YOU PULLED UP THERE, BOTH GENTLEMEN ARE

25   STILL IN THE BACK OF YOUR CAR, RIGHT?

26          A.    THEY ARE.

27          Q.    AT SOME POINT, YOU TAKE ONE OF THEM OUT,

28   RIGHT?

```
 1        A.   YES, SIR.

 2        Q.   WHO DO YOU TAKE OUT OF THE CAR FIRST?

 3        A.   MR. ELMORE.

 4        Q.   AND YOU PERSONALLY TOOK HIM OUT OF THAT SEAT?

 5        A.   YES, I DID.

 6        Q.   OKAY.  DID YOU ALSO PERSONALLY TAKE MR.

 7   CROWLEY OUT OF HIS SEAT?

 8        A.   EVENTUALLY, I DID.

 9        Q.   AFTER YOU ARRIVED AT THE POLICE STATION, AT

10   THE HEADQUARTERS, AT THE SALLY PORT, HOW LONG -- YOU

11   OBVIOUSLY GOT OUT OF THE DRIVER'S SIDE, RIGHT?

12        A.   YES.

13        Q.   HOW LONG AFTER THAT DID YOU TAKE MR. ELMORE

14   OUT OF HIS SEAT?

15        A.   ALMOST IMMEDIATELY.  I HAD TO SECURE MY

16   WEAPON, AND THEN I WAS INTERESTED, MAINLY, IN DOING THE

17   FINGERPRINTS TO LEARN WHO HE WAS.

18        Q.   WHEN YOU SAY, "ALMOST IMMEDIATELY," CAN YOU

19   GIVE US AN ESTIMATE, PLEASE.

20        A.   WITHIN THREE OR FOUR MINUTES.

21        Q.   MEANWHILE, IS ANYONE WATCHING THE CAR?

22        A.   OTHER OFFICERS ARE BACK AND FORTH.

23        Q.   SO YOU SECURED YOUR WEAPON.  DO YOU THEN GO

24   PUT HIS INFORMATION IN CAL. I.D.?

25        A.   I HAVE TO TAKE HIS FINGERPRINTS FIRST.

26        Q.   WAS HE IN THE CAR WHEN YOU TOOK HIS PRINTS?

27        A.   NO.

28        Q.   HOW LONG DID IT TAKE YOU TO TAKE THE PRINTS?
```

1      A.    PROBABLY TEN MINUTES.

2      Q.    MEANWHILE, MR. CROWLEY IS STILL IN THE CAR,

3 RIGHT?

4      A.    YES, SIR.

5      Q.    DO YOU CONDUCT A CAL. I.D. -- DOES THAT STAND

6 FOR "CALIFORNIA IDENTIFICATION"?

7      A.    I BELIEVE IT DOES.

8      Q.    IT'S A DIGITAL FINGERPRINT SYSTEM?

9      A.    IT IS.

10      Q.    IT IS USUALLY PRETTY RELIABLE?

11      A.    YES.

12      Q.    BEFORE YOU DO THAT, YOU HAVE TO TAKE OTHER

13 STEPS, THOUGH, RIGHT, TO TRY TO VERIFY SOMEONE'S

14 IDENTIFICATION?

15      A.    YES, WE DO.

16      Q.    WHAT SORT OF THINGS DO YOU HAVE TO DO?

17      **MS. KARR:**   OBJECTION.   RELEVANCE.

18      **THE COURT:**   SUSTAINED.

19      **MR. THOMPSON:**   YOUR HONOR, I'M SORRY.   THIS

20 GOES TO ALL THE TIME THAT MR. CROWLEY HAD TO --

21      **THE COURT:**   WELL, JUST ASK THE QUESTION.

22 CROWLEY WAS IN THE CAR HOW LONG?

23      **MR. THOMPSON:**   I THINK I HAVE ASKED THAT.

24      **THE COURT:**   WELL, THEN --

25      **MR. THOMPSON:**   MAYBE I HAVEN'T ASKED IT THAT

26 WAY.

27 **BY MR. THOMPSON:**

28      Q.    BEFORE YOU PULLED MR. CROWLEY OUT OF THE CAR,

1    HOW LONG HAD HE BEEN IN THERE?

2              THE COURT:  HOW LONG HAD HE BEEN THERE ALONE?

3              THE WITNESS: CAN YOU REPHRASE IT?

4    BY MR. THOMPSON:

5        Q.   JUST LIKE THE JUDGE SAID.

6              THE COURT:  YOU HAVE THE TWO GUYS IN THE CAR.

7    YOU DRIVE FROM POINT " A" TO THE THE POLICE STATION,

8    RIGHT?  YOU TAKE ELMORE OUT FIRST, RIGHT?  BECAUSE HE

9    HASN'T IDENTIFIED HIMSELF, RIGHT?

10             THE WITNESS: YES.

11             THE COURT:  AT SOME POINT, YOU LEAVE THE OTHER

12   GUY, CROWLEY, ALONE IN THE CAR, RIGHT?

13             THE WITNESS:  YES.

14             THE COURT:  WHILE YOU DO THE CAL. I.D. WITH

15   THIS FELLOW HERE, RIGHT?

16             THE WITNESS: YES.

17             THE COURT:  HOW MUCH TIME ELAPSES FROM THE

18   TIME YOU TAKE THIS FELLOW, MR. ELMORE, OUT TO THE TIME

19   YOU GET THE OTHER GUY OUT?

20             THE WITNESS: ABOUT TEN MINUTES.  AND THEN I

21   PUT MR. ELMORE BACK IN.

22   BY MR. THOMPSON:

23       Q.   AT WHAT POINT DID MR. CROWLEY SAY TO YOU, "HE

24   PUT IT UNDER HIS ASS"?

25       A.   I PUT -- I TOOK THE FINGERPRINTS, PUT MR.

26   ELMORE IN -- I LOOKED, MADE SURE THERE WAS NO COCAINE

27   SITTING THERE -- PUT MR. ELMORE BACK IN. AND THEN I

28   HAVE TO -- FOR THE FINGERPRINTS, I HAVE TO WALK THEM UP

1   TO THE SECOND FLOOR.  THEY GET SCANNED IN.

2           I COME BACK OUT, AND MR. CROWLEY HAD ALREADY

3   FLAGGED DOWN ANOTHER OFFICER, SAYING HE HAS ASTHMA.  SO

4   ANOTHER OFFICER SAT HIM OUTSIDE.  SO I GO OVER O MR.

5   CROWLEY AND SAY, "WHAT'S THE PROBLEM?"

6           HE SAID, "HEY, HE TOOK IT OUT OF HIS ASS.  HE

7   WAS TRYING TO GIVE IT TO ME."

8       Q.   SO HE'S CLAIMING ASTHMA, AND THEN HE IS

9   TELLING YOU THIS OTHER THING?

10      A.   YES, SIR.

11      Q.   AND YOU MENTIONED ABOUT SEARCHING YOUR CAR.

12  SO BEFORE YOU PUT MR. ELMORE BACK IN THE CAR, YOU

13  SEARCHED IT?

14      A.   YES, I DID.

15      Q.   AND WAS IT AT THAT POINT THAT YOU FOUND THIS

16  LARGER ROCK?

17      A.   NO.

18      Q.   WHEN DID YOU FIND THE LARGER ROCK?

19      A.   SO MR. CROWLEY TOLD ME THAT -- I'M SORRY.  SO

20  I BRING MR. ELMORE BACK IN, PUT HIM IN THERE -- I'M

21  SORRY.  I SEARCH THE CAR, PUT HIM BACK IN THERE, TAKE

22  THE PRINTS UP, COME BACK DOWN.  CROWLEY WAS ALREADY

23  SEATED OUTSIDE OF THE CAR.

24          HE TELLS ME, "IT'S UNDER HIS ASS, UNDER THE

25  SEATBELT.  HE TRIED TO GIVE IT TO ME."  I GO TAKE MR.

26  ELMORE OUT, AND HE LEANED MORE TOWARDS ME, WITH HIS

27  HANDS FACING INSIDE THE CAR.  I TAKE MR. ELMORE OUT,

28  LOOK UNDER THE SEATBELT, AND DISCOVER THE ROCK.

NEED
Video
Footage

1    Q.    WELL, HOW DID MR. CROWLEY TELL YOU THAT IF HE

2    IS SITTING OUT THERE IN THE THING, COMPLAINING ABOUT

3    ASTHMA?

4    A.    HE TOLD ME.

5    Q.    HOW WOULD HE HAVE SEEN THAT? *Need video*

6    A.    NO --

7         MS. KARR:    OBJECTION, YOUR HONOR.

8    SPECULATION.    ARGUMENTATIVE.

9         THE COURT:    IT'S ARGUMENTATIVE.    REPHRASE THE

10   QUESTION.

11        MR. THOMPSON:    ALL RIGHT.

12   BY MR. THOMPSON:

13   Q.    HOW FAR AWAY FROM THE CAR WAS MR. CROWLEY WHEN

14   HE SAID THAT DO YOU?

15   A.    HE TOLD ME HE SAW IT WHEN HE WAS IN THE CAR

16   WITH HIM.    THAT PERIOD WHEN I WALKED THE FINGERPRINTS UP

17   AND THEY WERE TOGETHER, HE SAW IT.    HE FLAGGED AN    *Why didn't*

18   OFFICER DOWN AND SAID HE HAS AN ASTHMA PROBLEM, AND THEY

19   TOOK HIM AND SAT HIM IN THE SEAT, OUTSIDE OF THE

20   VEHICLE.

21        SO WHEN I CAME DOWN, CROWLEY WAS ALREADY

22   OUTSIDE OF THE VEHICLE, AND HE TOLD ME, "HEY, I WAS IN

23   THE CAR.    ELMORE TRIED TO GIVE ME THE COCAINE, AND IT'S

24   UNDER THE SEATBELT."

25   Q.    ALL RIGHT.    THE ROOM 138 ISSUE --

26   A.    SIR.

27   Q.    THIS OCCURRED AFTER YOU FOUND THE ROCK ON THE

28   SEAT?

*Need video*

*he tell the other officer?*

*Need video*

Room # 138

45

1     A.   YES, IT DID.

2     Q.   AND, EVEN STILL, AFTER MR. CROWLEY HAD SAID,

3     "HE TRIED TO GIVE IT TO ME"?

4     A.   YES.

5     Q.   IT WAS YOU AND TWO OTHER OFFICERS IN ROOM 138,

6     RIGHT?

7     A.   A SERGEANT AND ANOTHER OFFICER, YES, SIR.

8     Q.   AND WAS MR. ELMORE STILL WEARING THE SAME

9     CLOTHING YOU DESCRIBED EARLIER?

10    A.   YES.

11    Q.   IS THERE ANY VIDEO SURVEILLANCE IN ROOM 138?

12    A.   THERE IS NOT. NEED → DNA

13    Q.   IT'S THE ROOM THAT THE D.U.I. EVALUATIONS ARE

14    DONE IN?

15         MS. KARR:  OBJECTION, YOUR HONOR.  RELEVANCE.

16         THE COURT:  SUSTAINED.

17    BY MR. THOMPSON:

18    Q.   HOW BIG IS THIS ROOM?

19    A.   IT'S PROBABLY, MAYBE AN EIGHT-BY-EIGHT ROOM.

20    THERE IS A TOILET.  IT'S A BATHROOM.

21    Q.   CAN YOU DESCRIBE FOR US, AS BEST YOU CAN, THE

22    CONFIGURATION OF WHERE THE -- EACH OF THE FOUR OF YOU IS

23    STANDING?

24    A.   I CAN DRAW IT.  IT MIGHT HELP.

25         MR. THOMPSON:  CAN WE HAVE TWO EXHIBIT TAGS,

26    PLEASE.

27         THE COURT:  MARK THE ONE, 14TH STREET, AS 1,

28    FOR IDENTIFICATION.  AND PREPARE A TAG, NUMBER 2, FOR

1    THE NEXT DIAGRAM.

2              (COURT'S EXHIBITS 1 AND 2, DIAGRAMS, ARE

3    MARKED FOR IDENTIFICATION.)

4              **MR. THOMPSON:**  YOUR HONOR, I HAVE LABELED THE

5    NEW DRAWING AS COURT'S EXHIBIT 2.  AND WHILE THE OFFICER

6    IS COMPLETING THAT, COULD I MOVE TO ADMIT COURT'S

7    EXHIBIT 1.

8              **THE COURT:**  ANY OBJECTION TO THE DIAGRAM, MS.

9    KARR?

10             **MS. KARR:**  NO, YOUR HONOR.

11             **THE COURT:**  ONE IS ADMITTED.

12             (COURT'S EXHIBIT 1, A DIAGRAM, IS RECEIVED

13   INTO EVIDENCE.)

14             **THE WITNESS:**  HOW CAN I LABEL THEM FOR YOU?

15   **BY MR. THOMPSON:**

16        Q.   ON THIS ONE, LET'S DO MR. ELMORE AS NUMBER 1,

17   AND YOU AS NUMBER 2.

18        A.   OKAY.

19        Q.   AND SERGEANT SALAS AS NUMBER 3.

20        A.   AND THEN OFFICER MASSEY --

21        Q.   I GUESS HE WOULD BE NUMBER 4.

22        A.   OKAY.  AND THEN, FOR YOUR KNOWLEDGE, THAT'S A

23   TOILET, TRASH CAN, AND A SINK.  AND IT'S NOT TO SCALE.

24             **MS. KARR:**  YOUR HONOR, COULD WE LET THE RECORD

25   REFLECT THAT, WHEN HE POINTED EACH OF THOSE ITEMS OUT,

26   HE WAS POINTING TO THE BOTTOM, RIGHT-SIDE CORNER,

27   REFERRING TO THE TOILET; AND TO THE LEFT SIDE OF THE

28   IMAGE WHEN HE WAS REFERRING TO THE SINK, AND --

1          **THE COURT:**  OKAY.  GOOD ENOUGH.  ALL RIGHT.

2    NEXT.

3    **BY MR. THOMPSON:**

4          Q.    THANKS, OFFICER.  YOU CAN RESUME YOUR SEAT.

5    AND WAS MR. ELMORE FACED TO THE WALL OR TO THE INTERIOR

6    OF THE ROOM?

7          A.    ORIGINALLY, TO THE WALL.  AND THEN -- WHICH

8    WOULD BE -- LET'S JUST SAY THE TOP IS THE NORTH WALL,

9    EVEN THOUGH IT'S NOT.

10         Q.    ALL RIGHT.

11         A.    IT WOULD BE FACING NORTH.  AND AS HE WAS

12   TAKING OFF HIS CLOTHES, HE KIND OF TURNED TO THE LEFT.

13         Q.    WHEN HE TOOK HIS PANTS DOWN, WAS HE FACING THE

14   WALL?

15         A.    YES.

16         Q.    AND IT WAS OFFICER MASSEY WHO SAW THE PIECE OF

17   ROCK COCAINE FALL?

18         A.    YES, SIR.

19         Q.    THIS IS THE .02-GRAM PIECE?

20         A.    YES.

21         Q.    DID YOU MATCH UP THAT PIECE WITH THE OTHER

22   PIECE, OR DID YOU ATTEMPT TO?

23         A.    NO.  WHEN I IMPOUNDED THEM, I LOOKED AT THEM

24   SIDE BY SIDE, BUT I DIDN'T TRY TO MATCH THEM UP.

25         Q.    YOU CAN'T TELL US WHETHER OR NOT ONE CAME OFF

26   OF THE OTHER? Look on Page #13 It'll Show He's

27         A.    I PERSONALLY CAN'T, NO.  Lying.

28         Q.    WAS THE PIECE THAT WAS FOUND IN THE CAR

On Page #13, He said the cocaine was Consistent
With the cocaine Found Earlier in the Patrol
Car.

1    CONTAINED WITHIN SOMETHING?

2        A.   YES.

3        Q.   WHAT WAS IT CONTAINED WITHIN?

4        A.   A PLASTIC WRAP.

5        Q.   LIKE, A PLASTIC ZIPLOCK, OR JUST A PIECE OF

6    PLASTIC WRAPPING?

7        A.   PLASTIC WRAP.  NO ZIP.

8        Q.   JUST SO WE HAVE A MENTAL PICTURE, THE PIECE

9    FROM INSIDE THE CAR -- ARE YOU FAMILIAR WITH THE MARBLE,

10   GENERAL-SIZE MARBLE, THAT KIDS PLAY WITH?

11       A.   YES.

12       Q.   AND IS IT BIGGER OR SMALLER THAN THAT?

13       A.   WHAT SIZE MARBLE?  THE BIG ONES, OR THE

14   LITTLE, TINY ONES?

15       Q.   THE LITTLE ONES THAT WE ALL PLAYED MARBLES

16   WITH.

17       A.   A LITTLE BIGGER THAN THAT.

18       Q.   THE PIECE THAT WAS .02 GRAMS WAS SIGNIFICANTLY

19   SMALLER?

20       A.   YES.

21       Q.   LIKE, A PIECE OF GRAVEL FROM A WALKWAY OR

22   SOMETHING?

23       A.   YES.  SMALL.  I COULD HOLD IT IN MY

24   FINGERTIPS.

25       Q.   WAS THAT PIECE, THE SECOND PIECE THAT MASSEY

26   POINTED TO, WAS THAT CONTAINED WITHIN ANYTHING?

27       A.   NO, IT WAS NOT.

28       Q.   JUST BARE?

49

```
 1      A.   YES, SIR.   → D.N.A

 2      Q.   ALL RIGHT.  AND YOU DIDN'T SEE THAT FALL OUT?

 3      A.   I DID NOT.

 4      Q.   ARE YOU STANDING ANY CLOSER TO MR. ELMORE THAN

 5   OFFICER MASSEY WAS?

 6      A.   WE WERE ABOUT THE SAME DISTANCE.  IT MAY HAVE

 7   JUST BEEN THE ANGLE THAT OFFICER MASSEY WAS AT.

 8      Q.   WHAT WAS MASSEY DOING EARLIER THAT DAY?

 9      A.   JUST PATROL.  HE JUST HAPPENED TO BE AT

10   HEADQUARTERS WITH A TOTALLY UNRELATED INCIDENT. NEED Video

11      Q.   ALL RIGHT.  HAD YOU -- BEFORE MR. ELMORE AND

12   MR. CROWLEY WERE IN THE BACK OF YOUR POLICE CAR, HAD YOU

13   HAD ANYBODY ELSE IN THERE THAT DAY?

14      A.   YES.

15      Q.   HOW MANY PEOPLE?

16      A.   ONE.

17      Q.   WHAT WAS THAT PERSON ARRESTED FOR?

18      A.   IT WAS A TRANSPORT.  I WASN'T ARRESTING HIM.

19   IT WAS A PAROLE ISSUE.

20      Q.   THAT WAS THE ONLY OTHER PERSON IN THE CAR?

21      A.   YES.

22           MR. THOMPSON:  COULD I HAVE JUST A MOMENT,

23   YOUR HONOR.  YOUR HONOR, THAT'S ALL I HAVE AT THIS

24   POINT.

25           THE COURT:  PEOPLE, ANYTHING FURTHER?

26           MS. KARR:  NO, YOUR HONOR.  THE PEOPLE REST.

27           THE COURT:  ALL RIGHT.  OFFICER, YOU CAN HAVE

28   A SEAT.  WE WILL ADMIT NUMBER 2.
```

1    **MR. THOMPSON:** YES. SO MOVED.

2    (COURT'S EXHIBIT 2, A DIAGRAM, IS RECEIVED

3 INTO EVIDENCE.)

4    **MS. KARR:** THE PEOPLE REST AT THIS POINT, YOUR

5 HONOR.

6    **THE COURT:** ANY AFFIRMATIVE EVIDENCE, MR.

7 THOMPSON.

8    **MR. THOMPSON:** NO, YOUR HONOR.

9    **THE COURT:** ARGUMENT? RESERVE AND SUBMIT?

10    **MS. KARR:** YES, YOUR HONOR.

11    **THE COURT:** MR. THOMPSON?

12    **MR. THOMPSON:** THERE IS JUST SOMETHING FISHY

13 ABOUT THIS. I'M GOING TO ARGUE THAT MR. CROWLEY HAD TOO

14 MUCH OF AN OPPORTUNITY AND A MOTIVE. I THINK THE

15 OFFICER'S TESTIMONY IS ALMOST CONFOUNDING AS TO HOW HE

16 EXPLAINS THE TEN MINUTES THAT MR. ELMORE WAS OUT OF THE

17 CAR AND THE TIME THAT MR. CROWLEY WAS IN THE CAR.

18    MR. CROWLEY CLEARLY HAD THE OPPORTUNITY AND

19 MOTIVE TO PUT THAT DOPE IN THERE. HE WAS THE ONE FOUND

20 WITH THE PIPE. MR. ELMORE WAS NOT. I ARGUE THAT HE

21 SHOULD NOT BE BOUND OVER ON COUNT 1. THERE IS NO

22 TESTIMONY --

23    **THE COURT:** COUNT 2.

24    **MR. THOMPSON:** THERE IS NO TESTIMONY THAT

25 .02 --

26    **THE COURT:** THE OLD 2, WHICH IS THE NEW 1.

27    **MR. THOMPSON:** I'M SORRY?

28    **THE COURT:** THE OLD 2 IS THE NEW COUNT 1

1    BECAUSE COUNT 1 WAS DISMISSED.

2             MR. THOMPSON:  CORRECT.  I'M ARGUING ABOUT THE

3    TWO DIFFERENT PIECES.

4             THE COURT:  SURE.

5             MR. THOMPSON:  THE LARGE PIECE THAT WAS FOUND,

6    ACCORDING TO THE OFFICER'S TESTIMONY, IN THE CAR SEAT

7    WAS TOO BIG FOR HIM TO HAVE MISSED RUNNING HIS HANDS UP

8    ALONG THE BACK SIDE OF MR. ELMORE.  HE WOULD HAVE FOUND

9    THAT.  I THINK THAT'S MR. CROWLEY'S DOPE.

10            AND THEN WE COME TO THE OTHER PIECE, WHICH IS

11   .02 GRAMS.  I DON'T THINK THE TESTIMONY IS THAT WAS A

12   USABLE QUANTITY.  I THINK HE SHOULD BE DISCHARGED FROM

13   COUNT 1.

14            THE COURT:  I THINK THAT WAS PART OF THE LAB.

15   PEOPLE?

16            MS. KARR:  YES, YOUR HONOR.  WE BELIEVE THERE

17   IS SUFFICIENT EVIDENCE THAT COUNT 1 SHOULD BE BOUND OVER

18   FOR PURPOSES OF TRIAL.  IT'S MY UNDERSTANDING THAT THERE

19   WAS A STIPULATION, WHICH INCLUDED THAT THAT .02 WAS A

20   USABLE AMOUNT.

21            THE COURT:  I WILL TAKE JUDICIAL NOTICE THAT

22   THE D.E.A. CALLS A USABLE QUANTITY .05, WHICH IS,

23   BASICALLY, WHAT YOU WILL ARGUE, RIGHT?

24            MR. THOMPSON:  I DON'T THINK THE COURT CAN

25   TAKE JUDICIAL NOTICE OF THAT.

26            THE COURT:  I CAN.

27            MR. THOMPSON:  I THINK THAT'S A SUBJECT TO

28   DISPUTE.

1    **THE COURT:**  THAT THEY HAVE A PUBLISHED --

2    **MR. THOMPSON:**  THEY CERTAINLY HAVE A PUBLISHED

3    DOCUMENT.

4    **THE COURT:**  THEIR PUBLISHED USABLE QUANTITY IS

5    .05.  YOU KNOW THAT.

6    **MR. THOMPSON:**  RIGHT.  I'M TALKING ABOUT A

7    .02.

8    **THE COURT:**  BUT THAT IS, BASICALLY, THE

9    GENESIS OF YOUR ARGUMENT, THAT IT'S NOT A USABLE

10   QUANTITY, AND YOU WOULD POINT TO THE OBJECTIVE STANDARD,

11   RIGHT?

12   **MR. THOMPSON:**  RIGHT.

13   **MS. KARR:**  IN REGARDS TO COCAINE BASE THAT WAS

14   FOUND IN THE OFFICER'S PATROL VEHICLE, IT'S ONLY A

15   COUPLE OF INCHES AWAY FROM THE DEFENDANT.  AT THE TIME

16   HE PLACED MR. CROWLEY IN THE VEHICLE, MR. CROWLEY MADE

17   THESE VOLUNTARY STATEMENTS.  AT THAT TIME, THERE WAS NO

18   EVIDENCE SHOWING THAT MR. CROWLEY EVEN KNEW THE

19   DEFENDANT WAS GOING TO BE ARRESTED, IN TERMS OF MOTIVE

20   FOR MR. CROWLEY PLACING IT IN THERE.

21   ADDITIONALLY, THE OFFICER RECEIVED A CITIZEN

22   COMPLAINT THAT IT WAS THE DEFENDANT THAT, IN FACT, HAD

23   SMOKED THE ROCK COCAINE.  AND IT'S NOT UNCOMMON, IT'S

24   REASONABLE TO BELIEVE, THAT THEY COULD HAVE POSSIBLY

25   SHARED A PIPE.

26   FURTHERMORE, THERE IS NO EVIDENCE THAT THE

27   OFFICER SAW MR. CROWLEY ATTEMPT TO COME CLOSE TO THE

28   DEFENDANT IN THE BACK OF THAT PATROL VEHICLE TO PLACE

1  THAT ROCK COCAINE UNDER THE BELT BUCKLE.  AND THEY WERE

2  BOTH HANDCUFFED DURING THE ENTIRE INCIDENT.

3          BASED OFF OF THIS EVIDENCE, THERE IS JUST

4  NOTHING TO INDICATE THAT IT WAS MR. CROWLEY, RATHER THAN

5  THE DEFENDANT, WHO ACTUALLY WAS FOUND WITH ROCK COCAINE

6  ON HIS PERSON LATER ON THAT SAME INCIDENT.

7          **THE COURT:**  OKAY.

8          **MS. KARR:**  AND, BASED OFF OF THIS, I WOULD ASK

9  THAT ALL COUNTS BE BOUND OVER FOR PURPOSES OF TRIAL.

10         **THE COURT:**  WELL, ACTUALLY, THERE IS A FAIR

11 ARGUMENT TO BE MADE THAT CROWLEY PLACED THE STUFF THERE.

12 THERE IS A GOOD, COLORABLE, FAIR ARGUMENT TO THAT

13 EFFECT.

14         BUT THE QUESTION IS -- NO.  YOU SUBMITTED,

15 OKAY.

16         BUT THE QUESTION IS, WOULD A PERSON OF

17 ORDINARY CAUTION OR PRUDENCE CONSCIENTIOUSLY ENTERTAIN A

18 STRONG SUSPICION OF MR. ELMORE'S RESPONSIBILITY HERE?

19 AND I THINK I HEARD THE OFFICER SAY THAT HE SEARCHED THE

20 CAR AFTER ONE GUY WAS OUT AND BEFORE HE WENT AND PULLED

21 THE OTHER ONE OUT, OKAY?

22         AND SO, I MEAN, THERE ARE SOME THINGS THAT CAN

23 -- ARE KIND OF GETTING LOST HERE.  FRANKLY, YOU COULD

24 PUT IT TWO INCHES -- YOU COULD PUT IT 18 OR 12 INCHES

25 FROM YOU.  THESE CASES WHERE THE STUFF IS LEFT BEHIND

26 ARE ALWAYS A PROBLEM.

27         BUT THERE IS AN INDEPENDENT WITNESS WHO SAYS,

28 "I SEE THE GUY SMOKING CRACK," OKAY?  HE'S GOT STUFF IN

1   HIS BACK SIDE, WHICH, AS MR. RANDALL WILL KINDLY POINT

2   OUT, IS EVIDENCE IN AND OF ITSELF THAT HE MIGHT NOT BE

3   USING IT HIMSELF, BASED ON THE LOCATION.

4          BUT YET HE HAS STUFF ON HIM AT A TIME WHERE

5   SOMEBODY SAYS THAT HE RECENTLY USED THE STUFF.  AND THEN

6   THERE IS -- THEY'RE ALL DOING IT.  LET'S BE REALISTIC.

7          I THINK, YEAH, I COULD FIND PROBABLE CAUSE TO

8   BELIEVE THAT MR. ELMORE IS GUILTY OF THIS STUFF AND

9   CROWLEY IS GUILTY OF IT.  OKAY.  IF HE HAD ARRESTED

10  CROWLEY, THERE IS PROBABLY ENOUGH THERE FOR CROWLEY

11  BECAUSE HE HAS GOT A SMOKING PIPE.  CROWLEY HAS A PIPE;

12  THIS GUY DOESN'T, RIGHT?

13          **MR. THOMPSON:**  RIGHT.

14          **THE COURT:**  SO -- BUT IT'S A PROBABLE CAUSE

15  STANDARD.  AND SO I THINK, BASED ON THE FACTS AND

16  CIRCUMSTANCES AND THE INFERENCES THAT CAN BE MADE --

17  THIS IS UNLIKE THE JURY INSTRUCTIONS, WHICH SAY, IF YOU

18  HAVE MULTIPLE INFERENCES THAT CAN BE MADE FROM

19  SOMETHING -- HERE, A REASONABLE INFERENCE CAN BE MADE.

20          AND A REASONABLE INFERENCE CAN BE MADE.  YOU

21  HAVE RECENT USE.  YOU HAVE STUFF UP HIS BUTT CHEEKS.

22  AGAIN, WHAT YOU MIGHT USE IS AN ARGUMENT FOR HE IS

23  TRYING TO DISTRIBUTE IT.  I DON'T KNOW IF YOU WANT TO GO

24  DOWN THAT ROAD.

25          THEN THERE IS STUFF THAT'S IN THE POSSESSION

26  OF BOTH OF THEM, OR PROBABLY IN POSSESSION OF BOTH OF

27  THEM.  AND IF YOU BELIEVE THE ONE GUY, THIS GUY HAD IT.

28  THIS GUY, MR. ELMORE, POINTS HIS FINGER AT THE OTHER GUY

1   AND SAYS, "HE'S THE ONE." AND HIS RUSE TO GET OUT OF

2   THE CAR WITH THE ASTHMA WAS SO THAT HE CAN DROP THE

3   STUFF IN THERE AND POINT THE FINGER AT MR. ELMORE.

4           I UNDERSTAND THE ARGUMENT, AND IT IS REALLY

5   FOR A JURY TO DECIDE.

6           SO I WILL FIND PROBABLE CAUSE TO BELIEVE THE

7   OFFENSES CHARGED IN THE RENUMBERED COUNT 1, POSSESSION

8   OF COCAINE BASE, HEALTH AND SAFETY CODE SECTION

9   11350(A). I WILL FIND PROBABLE CAUSE TO BELIEVE THAT

10  OFFENSE HAS BEEN COMMITTED, AND THE 148.9, AND THAT MR.

11  ELMORE IS GUILTY THEREOF.

12          THEREFORE, WE WILL HOLD MR. ELMORE FOR FURTHER

13  PROCEEDINGS IN SUPERIOR COURT. WHAT ARE WE DOING, A

14  TWO-WEEK ARRAIGNMENT DATE, SINCE IT WAS A BINDOVER ON

15  SOMETHING OTHER THAN THE COMPLAINT?

16          **MR. THOMPSON:** WE CAN RENUMBER BY

17  INTERLINEATION AND DO THE ARRAIGNMENT TODAY.

18          **THE COURT:** IF YOU ARE OKAY WITH THAT.

19          **MS. KARR:** THAT'S FINE.

20          **THE COURT:** WITH COUNSEL'S APPROVAL, I WILL

21  PUT COUNT 1 IS DISMISSED, 4/29/08; MY INITIALS.

22  RENUMBER COUNT 1; RENUMBER COUNT 2. RENUMBERED WITH MY

23  INITIALS, 4/29/08. ALL RIGHT.

24          IMMEDIATE ARRAIGNMENT, THEN. MS. KARR, IF WE

25  COULD ASK YOU TO SIGN THE COMPLAINT. MR. THOMPSON, YOU

26  WILL STIPULATE THAT THE SIGNATURE OF THE COMPLAINT BY

27  THE DEPUTY DISTRICT ATTORNEY WILL MAKE IT -- STIPULATE

28  IT WILL BE DEEMED THE INFORMATION AND WAIVE TIMELY

1  RECEIPT OF THE REPORTER'S TRANSCRIPT?  YES TO BOTH?

2          **MR. THOMPSON:**  YES, YOUR HONOR.

3          **THE COURT:**  IF YOU WOULDN'T MIND THE FORMALITY

4  OF AN ARRAIGNMENT.  SHE HAS SIGNED THE COMPLAINT.

5          **MR. THOMPSON:**  WE ARE IN RECEIPT OF THE

6  INFORMATION.  I HAVE DATED THE COMPLAINT WITH TODAY'S

7  DATE.  WAIVE FORMAL READING.  WE WOULD ASK THE COURT TO

8  ENTER A NOT GUILTY PLEA AND DENIAL OF ALL ALLEGATIONS ON

9  HIS BEHALF.

10          **THE COURT:**  WE WILL SHOW A NOT GUILTY PLEA IS

11  ENTERED; DENY ALLEGATIONS.  WE'LL SHOW PREVIOUS

12  ACKNOWLEDGEMENT, ADVISAL, WAIVER.  WE'LL SHOW

13  REPRESENTATION BY THE PUBLIC DEFENDER'S OFFICE.

14          AND WE WILL SAY THAT -- I FORGOT TO MENTION

15  THAT, ON THE PRIORS ALLEGATIONS, THE COURT IS NOT

16  REQUIRED TO MAKE ANY FINDINGS ON THOSE.  LET'S DOUBLE

17  CHECK WITH THE DUE COURSE DATES.

18          **MR. THOMPSON:**  THANK YOU.

19          **THE CLERK:**  READINESS, JUNE 10, AND TRIAL CALL

20  IS JUNE 18TH.

21          **THE COURT:**  HOW DO THOSE LOOK FOR YOU?

22          **MR. THOMPSON:**  JUNE 18TH MAY BE TOUGH.  I WILL

23  ADDRESS THAT AT THE READINESS CONFERENCE, THOUGH.

24          **THE COURT:**  GOOD ENOUGH.  MR. ELMORE, I KNOW

25  THEY MENTIONED PAROLE.  I DIDN'T HAVE A STATUS, BUT IF

26  THEY HAVE HAVE A PAROLE HOLD, IF IT GETS LIFTED, THERE

27  IS BAIL.  IF YOU MAKE BAIL, YOU STILL HAVE TO COME BACK

28  ON THOSE TWO DATES, IF THE HOLD IS LIFTED AND YOU MAKE

57

1  BAIL.

2          THE CLERK:  READINESS CONFERENCE, JUNE 10,

3  8:30, DEPARTMENT 31.  TRIAL CALL, JUNE 18, 9:00,

4  DEPARTMENT 11.  MOTIONS DUE, MAY 15.

5          MR. THOMPSON: MAY -- I'M SORRY?

6          THE CLERK:  15TH.

7          MR. THOMPSON:  YOUR HONOR, THERE IS ONE OTHER

8  THING.  GIVEN THAT COUNT 1 IS DISMISSED, MR. ELMORE HAD

9  $100 AND SOMETHING DOLLARS TAKEN FROM HIM, I'M SURE, AS

10  EVIDENCE.  SINCE THAT COUNT IS NO LONGER IN ACTION, I

11  WOULD ASK THAT THAT MONEY BE PERMITTED TO BE RELEASED TO

12  --

13          THE COURT:  PREPARE AN ORDER.  ASK THE D.A. IF

14  THEY WILL SIGN IT.

15          MR. THOMPSON:  ALL RIGHT.

16          THE COURT:  ON SOMETHING LIKE THAT, IF THE

17  D.A. SIGNS IT, I WILL SIGN IT.

18          MR. THOMPSON:  ALL RIGHT.

19          THE COURT:  OKAY.

20          (CONCLUSION OF PROCEEDINGS.)

21

22

23

24

25

26

27

28

1

STATE OF CALIFORNIA)

2                            )   SS.
COUNTY OF SAN DIEGO)

3

4

5

6

7       I, CHRISTINE EDDY, CSR NO. 13000, A REPORTER IN THE

8    SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR

9    THE COUNTY OF SAN DIEGO, HEREBY CERTIFY THAT I REPORTED

10   IN MACHINE SHORTHAND THE PROCEEDINGS HAD IN THE WITHIN

11   CASE, AND THAT THE FOREGOING TRANSCRIPT, INCLUSIVE, IS

12   A FULL, TRUE, AND CORRECT TRANSCRIPT OF THE SAID

13   PROCEEDINGS.

14                    DATED THIS 29TH DAY OF APRIL, 2008

15

16

17                          CHRISTINE EDDY
                            CSR NO. 13000

18

19

20

21

22

23

24

25

26

27

28

1
2

# CHRONOLOGICAL INDEX
## OF WITNESSES
## APRIL 29, 2008

3

WITNESS                                                    PAGE
**GREGORY MINTER**, CALLED BY THE PEOPLE
DIRECT EXAMINATION
4    BY MS. KARR.............................    2
CROSS-EXAMINATION
5    BY MR. THOMPSON.........................   16

6

7

8

9

10

11

12

13

14

15

# INDEX
## OF COURT'S EXHIBITS
## APRIL 29, 2008

16

EXHIBIT                              MARKED      RECEIVED
17   NO. 1                             PAGE 46     PAGE 46
     (A DIAGRAM)
18   NO. 2                             PAGE 46     PAGE 50
     (A DIAGRAM)

19

20

21

22

23

24

25

26

27

28

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

☑ CENTRAL  ☐ NORTH  ☐ EAST  ☐ SOUTH

DA _____

DATE _____ AT _____ M.

PRESENT: HON _____    JUDGE PRESIDING DEPARTMENT _____

CLERK _____    REPORTER _____    CSR# _____

REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA 92112-0128

THE PEOPLE OF THE STATE OF CALIFORNIA

DEPUTY DISTRICT ATTORNEY _____

VS.

_____
DEFENDANT

ATTORNEY FOR DEFENDANT (PD/APD/PCC/RETAINED)

VIOLATION OF _____

ALLEG(S) _____    INT _____    ON FILE / SWN

PRIOR(S) _____    LANGUAGE _____

DEFENDANT ☐ PRESENT ☐ NOT PRESENT ☐ NOT PRODUCED _____

PRELIM / TRIAL DATE CONFIRMED / REMAINS AS SET / VACATED. ☐ READINESS ☐ MOTIONS REMAIN(S) AS SET / VACATED.

☐ DEFENDANT ADVISED OF RIGHTS, WAIVES RIGHTS. ☑ DEFT. SWORN & EXAMINED. ☐ DEFENDANT WITHDRAWS "NOT GUILTY" PLEA AND NOW PLEADS

☐ GUILTY ☐ NOLO CONTENDERE TO:

**R E A D I N E S S**

# Exhibit (C)

☐ PEOPLE V. WEST PLEA. ☐ COUNSEL & DEFENDANT STIPULATE TO PRELIMINARY / GRAND JURY TRANSCRIPT AS FACTUAL BASIS OF PLEA.

☐ ON MOTION OF COURT (PEOPLE / DEFENDANT COUNT(S) _____ CASE _____ REMAINING IS / ARE DISMISSED FOJ / VOP.

☐ ON MOTION OF COURT / PEOPLE / DEFENDANT ALLEGATION(S)/PRIOR(S) _____ REMAINING IS / ARE STRICKEN FOJ / VOP.

☐ PC 1210 ☐ ACCEPTED. ☐ DECLINED.    ☐ PC 1000, DEFERRED ENTRY OF JUDGMENT, GRANTED _____ MOS. / YRS.  TIER I / TIER II.

☐ DEFENDANT TO PAY ☐ $_____    ADMIN FEE ☐ $_____    DEJ RESTITUTION FEE PER PC 1001.90  BY _____

**C U S T S A T T**

☐ DEFT REMANDED TO THE CUSTODY OF SHERIFF ☐ WITHOUT BAIL ☐ WITH BAIL SET AT / REDUCED TO / INCREASED TO $_____.    ☐ PC 1275

☐ DEFT TO REMAIN AT LIBERTY ☐ ON BOND POSTED $_____    ☐ ON OR / SOR.

☑ DEFT ORDERED RELEASED FROM CUSTODY ☐ ON OR / SOR ☐ PROBATION ☑ CASE DISMISSED. ☐ ACQUITTED. ☐ THIS CASE ONLY.

WAIVERS: ☐ STATUTORY TIME PRELIM / TRIAL / JUDGMENT. ☐ PRELIM ☐ SPEEDY TRIAL ☐ HARVEY / ARBUCKLE ☐ PRESENCE AT POST-SENTENCE HRG.

**F U T U R E**

☐ WAIVES ATTY / INTERPRETER CONFLICT FOR THIS HRG. ☐ COMPL. DEEMED INFO, IMMED. ARRAIGNMENT (SEE CRM-2A.) ☐ IMMED. SENTENCING (SEE CRM-2B.)

FOURTH AMENDMENT WAIVER: ☐ IS IMPOSED AS A CONDITION OF RELEASE / PROBATION. ☐ REMAINS IN EFFECT. ☐ IS DELETED.

_____ IS SET FOR / CONT'D / TRAILED TO _____ AT _____ IN DEPT. _____

ON MOTION OF COURT / PEO. / DEFT. REASON: _____ EST. PRELIM: _____ DAYS LEFT (TRIAL) _____

☐ READINESS IS SET FOR / CONT'D TO _____ AT _____ IN DEPT. _____ MOTIONS DUE: _____

**B O N D S**

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $_____    ☐ SERVICE FORTHWITH. ☐ ORDERED WITHHELD TO _____

☐ BENCH WARRANT ISSUED / ORDERED _____ IS RECALLED / RESCINDED.

☐ BAIL IS ☐ EXONERATED ☐ FORFEITED. AMOUNT $_____    BOND NO. _____

BOND COMPANY _____    AGENT _____

☐ BAIL FORFEITURE OF _____ IS SET ASIDE / REINSTATED / EXONERATED. SURETY TO PAY $_____    W/IN 30 DAYS. ☐ FEES WAIVED.

**M H**

☐ PROCEEDING SUSPENDED PER PC 1368. MENTAL COMPETENCY EXAMINATION ON _____ AT _____

BY FORENSIC PSYCHIATRY CLINIC.  FEMALES, ROOM 1003, CENTRAL COURTHOUSE; MALES , CENTRAL DETENTION FACILITY.

HEARING ON _____ AT _____ IN DEPARTMENT _____, CENTRAL COURTHOUSE.

☐ THE SHERIFF IS ORDERED TO TRANSPORT DEFENDANT TO AND FROM THE EXAMINATION AND HEARING SHOWN ABOVE.

**P R O B T N**

☐ REPORT ORDERED: ☐ PRESENTENCE. ☐ POST-SENTENCE, COPY TO BE SENT DIRECTLY TO DEPT. OF CORRECTIONS PER PC 1203c.

☐ DEFENDANT FOUND GUILTY BY ☐ JURY VERDICT. ☐ COURT FINDING. ☐ DEFT. WAIVES POST-SENTENCE INTERVIEW.

☐ DEFT. ORDERED TO REMAIN IN COURTROOM UNTIL INTERVIEWED BY COURT PROBATION OFFICER FOR A LIMITED REPORT.

**R F R L**

☐ DEFENDANT REFERRED TO / ORDERED TO REPORT IMMEDIATELY TO PROBATION DEPT.  FOR INTERVIEW: ☐ 3977 OHIO STREET, SAN DIEGO

☐ 330 W. BROADWAY, 5TH FL, SAN DIEGO ☐ 325 S. MELROSE, VISTA ☐ 250 E. MAIN ST., 8TH FL, EL CAJON ☐ 1727 SWEETWATER ROAD, NATIONAL CITY.

OTHER:

PARTIES STIPULATE TO THE RELEASE OF PROPERTY SEIZED IN THIS CASE. ORDER TIFO & GRANTED BY THE COURT.

**JEFFREY F. FRASER, JUDGE**
_____
JUDGE OF THE SUPERIOR COURT

SDSC CRM-2C(Rev. 5-04)

**REFERRAL TO PROBATION**

1  STEVEN J. CARROLL
   Public Defender
2  County of San Diego
   David Thompson
3  Deputy Public Defender
   State Bar No. 203798
4  233 'A' Street, Suite 500
   San Diego, California 92101
5  Telephone: (619) 338-4700

6
   Attorney for Defendant
7  Morris Elmore

**FILED**
SAN DIEGO SUPERIOR COURT

MAY 0 2 2008

CLERK OF THE SUPERIOR COURT
BY_____C. SARNO

EXhibit (D.)

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF SAN DIEGO

10

11  THE PEOPLE OF THE STATE OF          )  Case No.: CD213010
                                        )
12  CALIFORNIA,                         )  **MOTION FOR RELEASE OF PROPERTY**
                                        )
13              Plaintiff,              )  Date:  05/02/2008
                                        )  Time:  08:30 am
14      vs.                             )  Dept:  31
                                        )
15  Morris Elmore,                      )
                                        )
16              Defendant               )
                                        )
17  _____ )

18

19  **TO:   BONNIE DUMANIS, DISTRICT ATTORNEY FOR THE COUNTY OF SAN DIEGO
    AND/OR HIS AUTHORIZED REPRESENTATIVE:**

20

21      **NOTICE IS HEREBY GIVEN** that on the above time and date, or as soon thereafter as counsel

22  may be heard, in the Superior Court of San Diego, located at 220 West Broadway, San Diego,

23  California, Defendant Morris Elmore will move the court for an order to return property.

24      This motion is based on the records and files of this case, the attached memorandum of points

25  and authorities and all other matters properly presented to the court at the hearing on this matter.

26      The items requested are specified in a PROPERTY TAG #052535 as follows:

27                          $183.00 USD

28

                                    1

Motion for Release of Property

# ARGUMENT

## DEFENDANT HAS A RIGHT TO HAVE THIS COURT ORDER THE AUTHORITIES TO RETURN HIS PROPERTY WHICH IS NOT CONTRABAND, WEAPONS OR EVIDENCE OF CRIME.

There is no authority for the police or any other governmental agency to retain possession of property which is not contraband, stolen property or evidence. (See *People v. Superior Court (McGraw)* (1979) 100 Cal.App.3d 154, 160; Penal Code section 411 (stolen property); *Buker v. Superior Court* (1972) 25 Cal.App.3d 1085 (money).) The entire statutory scheme, Penal Code section 1407-1422, envisions the return of all property to its owner or possessor with the exception of dangerous or deadly weapons, narcotic or poison drugs, explosives or items prohibited by law. (Pen. Code § 1419.)

Absent a contrary showing, the defendant is presumed to own the property which he possessed when he was arrested and which was taken from him in Evidence Code section 673 "things which a person possesses are presumed to be owned by him". This presumption operates "until the state has produced evidence which would support a finding that [he] did not in fact own the property." (*People v. Superior Court (McGraw)*, supra, at 159.)

When the authorities take property from a criminal defendant, they do so "on behalf of the court for use in a judicial proceeding" and the officer taking the property "must respond, as does any custodian, to the orders of the court for which he acted." (*People v. Icenogle* (1985) 164 Cal.App.3d 620 at 623.)

The case of *Buker v. Superior Court* ((1972) 25 Cal.App.3d 1085) makes clear both the duty and authority of the trial court to return property. The defendants brought a nonstatutory motion for return of monies seized during the execution of a search warrant.

The Court of Appeal initially noted that trial courts have power to release property both under Penal Code section 1536 when the property is seized under a warrant, and under "the inherent power of the court to control and prevent the abuse of its process (Id. at 1089.)

The trial court had refused to return the property on the grounds that it might be admissible as evidence, but the appellate court found that "denial of the motion upon the ground the seized currency should be retained in custody because there was some color upon which it could be admitted into evidence constituted an abuse of discretion." (Id. at 1090.)

2

Motion for Release of Property

1    An earlier case, *Gershenshorn v. Superior Court* ((1964) 227 Cal.App.2d 361), specifically

2  permits bringing a nonstatutory motion for return of property seized without a warrant (<u>Id</u>. at 365). The

3  court also disposed of the contention that only property which had been introduced into evidence could

4  be returned by court order:

5         But even as to property not yet offered or received in evidence we think judicial control
          still exists. We are not now concerned with a private seizure.... We deal with property

6         seized by a public officer, acting under color of his status as a law enforcement officer,
          and seized solely on the theory that it constitutes a part of evidence on which judicial

7         action against its owner... will be taken. We regard property so taken and so held as
          being as much held on behalf of the court... as is property taken and held under a warrant.

8         (Id. at 366.)

9    The decision preceding *Gershenshorn v. Superior Court* was *People v. Gershenshorn* ((1964)

10  225 Cal.App.2d 122). There the court clearly stated the rule regarding motions for return of property:

11        ...one whose property is illegally seized may desire... to procure its return. In that case he
          may, either as an alternative to, or in conjunction with, a motion to suppress, move for its

12        return.... If the property was seized without a warrant, the courts have allowed a similar
          motion. (Id. at 125.)

13

14    In this case, Mr. Elmore was arrested and charged with possessing cocaine base for sale, simple

15  possession of cocaine base, and giving false information to a peace officer. Prior to the start of the

16  preliminary examination, the People moved to dismiss the possession for sales count. Mr. Elmore was

17  bound over on the charges at preliminary examination. Within a few days, the People moved to dismiss

18  the case in its entirety.

19    In light of this, there exists no legal rationale as to why the requested property should not be

20  released and ordered returned.

21  Dated: May 1, 2008                      Respectfully submitted,

22                                          STEVEN J. CARROLL
                                            Public Defender
23

24                                  By:     _____

25                                          David Thompson
                                            Deputy Public Defender

26                                          Attorneys for Defendant
                                            Morris Elmore

27

28

                                          3

1  IT IS STIPULATED BY AND BETWEEN THE PARTIES THAT the money ($183.00 USD) seized

2  from the defendant in this case, Morris Elmore, be returned to him.

3

4  IT IS SO STIPULATED:

5  May 1, 2008                                    May 2, 2008

6

7  David A. Thompson                              Kris Anton
   Attorney for the Defendant                     Deputy District Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1  STEVEN J. CARROLL
    Public Defender
2  County of San Diego
    David Thompson
3  Deputy Public Defender
    State Bar No. 203798
4  233 'A' Street, Suite 500
    San Diego, California 92101
5  Telephone: (619) 338-4700

6

    Attorney for Defendant
7  Morris Elmore

**FILED**
SAN DIEGO SUPERIOR COURT

MAY 0 2 2008

CLERK OF THE SUPERIOR COURT
BY _____ C. SARNO _____

8         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9         **IN AND FOR THE COUNTY OF SAN DIEGO**

10

11  THE PEOPLE OF THE STATE OF    )  Case No.: CD213010

12  CALIFORNIA,             )  **ORDER TO RELEASE PROPERTY**
                     )
13         Plaintiff,      )
                     )
14     vs.               )
                     )
15  Morris Elmore,        )
                     )
16         Defendant    )
                     )
17  _____)

18  **TO:   WILLIAM LANDSDOWNE, CHIEF OF POLICE FOR SAN DIEGO POLICE**
19           **DEPARTMENT, OR HIS AUTHORIZED REPRESENTATIVE:**

20      **YOU ARE HEREBY ORDERED** to return to Morris Elmore, (d.o.b. 10/21/1964), , the

21  following property which was seized at the time of defendant's arrest in case 08040023407 (Court case

22  # SCD213010), taken from the person of the defendant by Officer Minter, Badge # 6052, and

23  impounded on property tag TAG # 052535:

24                    $183.00 USD

25  Dated: <u>May 2, 2008</u>          JEFFREY F. FRASER, JUDGE

26                    JUDGE OF THE SUPERIOR COURT

27

28

                            5

Motion for Release of Property

Exhibit (E)



# SAN DIEGO POLICE DEPARTMENT
# COMPLAINT CONTROL FORM

Internal Affairs Unit
Complaint Index No. _____ - _____

**IA USE ONLY**

**COMPLAINANT**

Mr. Morris Elmore #F03648/F4#18-17Low
P. O. Box 799004
San Diego, CA 92179

SEX: _____ RACE: _____ HGT: _____ WGT: _____
HOME PHONE: _____
BUS. PHONE: _____

CITY _____ ST____ ZIP____

COMPLAINANT INJURED? Y / N    PHOTOS TAKEN? Y / N

EMPLOYED? Y / N   OCCUPATION_____

PHOTOS TAKEN BY
NAME & ID NUMBER: _____

INTERPRETER REQUIRED ☐ LANGUAGE _____

**WITNESSES**

NAME _____   DOB _____ SEX: _____ RACE: _____
HOME ADDRESS _____   HOME PHONE: _____
CITY _____ ST____ ZIP____   BUS. PHONE: _____
BUS. ADDRESS _____   INTERPRETER REQUIRED ☐ LANGUAGE _____
CITY _____ ST____ ZIP____

NAME _____   DOB _____ SEX: _____ RACE: _____
HOME ADDRESS _____   HOME PHONE: _____
CITY _____ ST____ ZIP____   BUS. PHONE: _____
BUS. ADDRESS _____   INTERPRETER REQUIRED ☐ LANGUAGE _____
CITY _____ ST____ ZIP____   WITNESS SEARCH CONDUCTED? ☐ YES ☐ NO
LIST ADDITIONAL WITNESSES ON ARJIS 3 FORM

**SDPD**

UNIT # ON INCIDENT DATE IF APPLIES

ID Number: 6052    Name: MINRN    Div: C    Unit #: _____
ID Number: 6310    Name: MASSEY    Div: C    Unit #: _____
ID Number: 4442    Name: SALAS    Div: C    Unit #: _____

**INCIDENT**

INCIDENT LOCATION: _____
DATE: _____ TIME: _____ CAD INCIDENT NUMBER (Example: 94070056149): _____
COMPLAINT RECEIVED:   IN PERSON   PHONE   LETTER   ROUTE SLIP   OTHER
CCF REC'D BY:  ID #: 3756   NAME: Slogg   DIV: 1A   DATE: _____ TIME: _____
COMPLAINT RESULT OF:   INVEST.   ARREST   TRAF. CONT.   RADIO CALL   SERVICE REQ.   OTHER
INVESTIGATING DIVISION: _____ INVESTIGATING SUPERVISOR: _____

**COMPLAINT SYNOPSIS**

SEE ATTACHED

*Keep this copy for your files.*

**MISC**

INQUIRY ONLY ☐
C.O.'S INITIALS _____

CCF INVESTIGATION
APPROVED BY: _____
COMMANDING OFFICER

I.A. Use ONLY:   I.A. Reviewed: _____
SIGNATURE & ID NUMBER

Date: _____

PD-232 (Rev. 8-06)

601300

*This information is available in alternative formats upon request.*

1.) Internal Affairs Received my Complaint
June 13, 2008 / At 11:15 AM (Stamped on Complaint Form)

2.) SGT. Swiskoski /

3.) LT. Bragg # 3756

4.) Sent Copy back July 2, 2008
To Internal Affairs + 0
Investigate.

<u>**PROOF OF SERVICE BY MAIL**</u>

STATE OF CALIFORNIA     )
                           ) SS
COUNTY OF  SAN DIEGO )

[C.C.P. §§ 446, 2015.5; 28 U.S.C. §1746]

I, Maurice Knight , am a resident of the State of California and am over the age of eighteen years and am not a party to the above-entitled action.  My address is listed below.

On X 8-11-08 , I served the following documents:

by placing a true copy thereof enclosed in a sealed envelope with First Class postage thereon fully prepaid in the United States Mail by delivering to prison officials for processing through the Institution's internal legal mail system at San Diego California, addressed as follows::

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed in the County of San Diego, California on X 8-11-08 .

Maurice Knight #G21298
F4/#18-117 up
P.O. Box 799004
San Diego, CA   92179-9004

Pursuant to the holding of the United States Supreme Court in <u>Houston v. Lack</u> 108 S. Ct. 2379, 487 U.S. 266, 101 L.Ed.2d 245 (1988) and FRAP, Rule 4 (c) inmate legal documents are deemed filed on the date they are delivered to prison staff for processing and mailing via the Institution's internal legal mail procedures.

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Morris Larnard Elmore

**FILING FEE PAID**
Yes    No
**IFP MOTION FILED**

AUG 11 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Minter, et al

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Morris Larnard Elmore
PO Box 799004
San Diego, CA 92179
F-03648

**ATTORNEYS (IF KNOWN)**

'08 CV 1464 L PCL

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
**(For Diversity Cases Only)         FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

|                                        | PT  | DEF |                                                              | PT  | DEF |
|----------------------------------------|-----|-----|--------------------------------------------------------------|-----|-----|
| Citizen of This State                  | ☐1  | ☐1  | Incorporated or Principal Place of Business in This State    | ☐4  | ☐4  |
| Citizen of Another State               | ☐2  | ☐2  | Incorporated and Principal Place of Business in Another State| ☐5  | ☐5  |
| Citizen or Subject of a Foreign Country| ☐3  | ☐3  | Foreign Nation                                               | ☐6  | ☐6  |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

42 U.S.C. 1983

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|---|--------------------|------------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding    ☐ 2 Removal from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23    DEMAND $    Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**    JUDGE    Docket Number

DATE    8/11/2008    SIGNATURE OF ATTORNEY OF RECORD

CR    RMElley

